Seth M. Lehrman (178303)
seth@epllc.com
EDWARDS POTTINGER LLC
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone: 954-524-2820
Facsimile:  954-524-2822

Attorneys for Plaintiff
Retina Associates Medical Group, Inc.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| RETINA ASSOCIATES MEDICAL GROUP, INC., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KEELER INSTRUMENTS, INC.,<br><br>Defendant. | Case No.: 8:18-cv-01358-CJC-DFM<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>Judge:    Hon. Cormac J. Carney<br><br>Date:       July 29, 2019<br>Time:       1:30 P.M.<br>Courtroom:   7C<br><br>[Filed and Served Concurrently with Proposed Order] |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 29, 2019, at 1:30 p.m., before the United States District Court, Central District of California, Southern Division, Courtroom 7C, 350 W. 1st Street, Los Angeles, CA 90012 (7th Floor), Plaintiff Retina Associates Medical Group, Inc., will move for an order granting preliminary approval of the class action settlement and certification of the settlement class as detailed in Plaintiff's Memorandum of Points and Authorities.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, exhibits thereto, the Complaint, all other pleadings and papers on file in this action, and upon such other evidence and arguments as may be presented at the hearing on this matter.

Date: June 27, 2019

**EDWARDS POTTINGER LLC**

By: */s/ Seth M. Lehrman*
    SETH M. LEHRMAN
    Attorney for Plaintiff

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7-3

Plaintiff's counsel certifies that prior to filing the instant motion, the Parties, through counsel, met and conferred pertaining to the subject matter of the instant motion. Defendant does not oppose this motion.

Date: June 27, 2019                                **EDWARDS POTTINGER LLC**

By: */s/ Seth M. Lehrman*
       SETH M. LEHRMAN
       Attorney for Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES..................................................................... iii

I. INTRODUCTION ................................................................................1

II. STATEMENT OF FACTS ...................................................................3

   A. Factual Background ......................................................................3

   B. Proceedings to Date......................................................................4

      1. Litigation ..................................................................................4

      2. Mediation .................................................................................4

   C. Statement of Facts ........................................................................5

      1. The Class ..................................................................................5

         a.  The Class definition .........................................................5

         b. Class membership determination.....................................5

      2. Settlement payment ................................................................5

      3. Monetary benefit to Class Members and Class Notice .....................6

      4. Scope of Release .....................................................................8

      5. Opportunity to opt out and object .........................................8

      6. Payment of Notice and Administrative Costs .......................9

      7.  Application for a Class Representative Award .....................9

      8. Class Counsels' application for attorneys' fees, costs, and expenses ...............................................................................10

      9. *Cy pres* distributions. .............................................................10

III. ARGUMENT......................................................................................10

   A. The legal standards for preliminary approval of a class action settlement ..................................................................................10

   B. Liability is highly contested and both sides face significant challenges in litigating this case ................................................13

   C. Defendant's agreement to finance the common benefit fund provides a fair and substantial benefit to the Class...................14

   D. The Settlement was reached through arm's-length negotiation, without collusion, with the assistance of the mediator .................14

PLAINTIFF'S NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

**E. Experienced counsel have determined that the Settlement is appropriate and fair to the Class** ...............................................**14**

**F. The Court should preliminarily certify the Class for purposes of settlement** ...................................................................................**15**

**G. The proposed Class in the thousands is numerous.** ...........................**15**

**H. The commonality requirement is satisfied, because common questions of law and fact exist** ...............................................**15**

**I. The typicality requirement is met** ...................................................**16**

**J. The adequacy requirement is satisfied** ...........................................**17**

**K. Common questions predominate, sufficient to certify a Class for settlement purposes.** .............................................................**18**

**L. Class treatment for settlement purposes is superior to individual resolutions** ...........................................................................**18**

**M. The proposed Class Notice is consistent with Rule 23 and the Ninth Circuit requirements and provides adequate notice for claims, objections and opt outs** ...................................................**20**

**N. The Court should preliminarily certify the Class for purposes of settlement.** ...................................................................................**22**

**O. The Court Should Appoint Kurtzman Carson Consultants, LLC, as the Settlement Administrator** ...............................................**23**

**P. The Final Approval Hearing should be scheduled** ...........................**23**

**IV. CONCLUSION** ......................................................................................**24**

**PLAINTIFF'S NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

ii

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. Inc. v. Woodward*, 521 U.S. 591 (1997)........................................19

*Barani v. Wells Fargo Bank, N.A.*, 2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) ...21

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)............................12

*Elkins v. Equitable Life Ins. of Iowa*, 1998 WL 133741

   (M.D. Fla. Jan. 27, 1998) ...................................................................................19

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ................... *passim*

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14

   (9th Cir. 1964)....................................................................................................15

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200

   (S.D.N.Y. 1995) .................................................................................................11

*Kirkorian v. Borelli*, 695 F.Supp. 446 (N.D. Cal.1988) .........................................12

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507 (9th Cir. 1978).................23

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)................13

*Lo v. Oxnard European Motors, LLC*, 2012 WL 1932283

   (S.D. Cal. May 29, 2012) ...................................................................................21

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,

   244 F.3d 1152 (9th Cir. 2001)....................................................................... 18-19

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)...................20

*Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982) .... 11-12

*Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*,

   323 F. Supp. 364, 372 (E.D. Pa. 1970) ..............................................................12

*Schaffer v. Litton Loan Servicing, LP*, 2012 WL 10274679

   (C.D. Cal. Nov. 13, 2012) ..................................................................................21

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994)......................................................20

*Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688 (M.D. Fla. 2005)....19

**PLAINTIFF'S NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

iii

*Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370 (9th Cir. 1993).......................22

*Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443

   (9th Cir. 1989)...................................................................................................11

*Valentino v. Carter-Wallace*, 97 F.3d 1227 (9th Cir. 1996)...................................19

*Wehner v. Syntex Corp.*, 117 F.R.D. 641 (N.D. Cal. 1987)...................................16

*West Va. v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1086 (2d Cir. 1971)...................12

*Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610

   (S.D. Cal. 2008) ...................................................................................... 14-15, 17

**Statutes**

28 U.S.C. § 1715...........................................................................................................2

Fed. R. Civ. P. 23 ............................................................................................. *passim*

Telephone Consumer Protection Act, 47 U.S.C. § 227 ................................... *passim*

**Other Authorities**

*Manual for Complex Litigation* (Fourth) (Fed. Judicial Center 2004).............. 10-12

*Moore's Federal Practice – Civil* § 23.165[3] (3d ed.)...........................................12

*Newberg on Class Actions* §§ 11.25, *et seq.*, and § 13.64

   (4th ed. 2002 and Supp. 2004) ........................................................................11

**PLAINTIFF'S NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

iv

## MEMORANDUM OF POINTS & AUTHORITIES

### I.   INTRODUCTION.

Plaintiff Retina Associates Medical Group, Inc.  ("Plaintiff" or "Class Representative"), individually and on behalf of the "Settlement Class" (as defined below), submits this motion for preliminary approval of a proposed settlement ("Settlement") of this action ("Litigation") and certification of the proposed Settlement Class. Defendant Keeler Instruments, Inc. ("Keeler" or "Defendant") does not oppose Plaintiff's motion.  (Plaintiff and Defendant shall collectively be referred to as the "Parties").   The terms of the Settlement are set forth in the Settlement Agreement ("Agreement" or "Settlement"),[1] Attached hereto as Exhibit "A".   See Declaration of Seth Lehrman ("Lehrman Decl."), ¶ 32, Ex. B, and Declaration of Ronald J. Eisenberg ("Eisenberg Decl."), Ex. C.

The proposed Settlement resulted from the Parties' participation in an all-day mediation session before Bennett G. Picker and subsequent settlement discussions.   The Settlement provides for a real financial benefit to the Class Members.  The Settlement Class, totaling 5,581, consists of all persons or business entities in the United States who were sent an unsolicited telephone facsimile message of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of Keeler on or after August 3, 2014 ("Class Period").

The compromise Settlement reached with the guidance of the mediator will create a Settlement Fund of $310,000, also called "Settlement Benefits," to be established by Keeler.  The amount of the Settlement Fund shall not be reduced as a result of any member of the Settlement Class electing to opt out or be excluded from the Settlement or for any other reason.  The Settlement Fund will pay for a Settlement Administrator, Kurtzman Carson Consultants, LLC ("KCC"), which

---

[1]   Unless otherwise specified, capitalized terms used in this memorandum are intended to have the same meaning ascribed to those terms in the Agreement.

1

will be responsible for providing notice to the Settlement Class, providing notice of this proposed settlement under 28 U.S.C. § 1715 ("Class Action Fairness Act" or "CAFA"), providing and disbursing settlement checks to Class Members who submit a claim form and who do not opt-out, creating and maintaining a Settlement Website, maintaining a toll-free telephone number, preparing an Opt-Out List, preparing a list of persons submitting objections to the settlement, and acting as a liaison between Class Members and the Parties regarding the settlement. Settlement members who submit a Valid Claim Form and do not opt-out will receive by check a pro rata share of the Settlement Fund (after deduction of Settlement Administration Costs, attorneys' fees, expenses, and costs to Class Counsel, as approved by the Court, a Class Representative Award, if any, to the Representative Plaintiff), and any *cy pres* distribution. The Representative Plaintiff will receive an incentive payment of $5,000 (subject to Court approval) for bringing and litigating this action. Class Counsel will request an attorneys' fee award of up to $77,500 (i.e., 25% of the $310,000 Settlement Fund) and litigation costs and expenses, subject to Court approval, to be paid out of the Settlement Fund. Any unclaimed funds from uncashed settlement checks, including settlement checks to Class Members who submit Valid Claim Forms but whose current valid addresses could not be determined shall be delivered in equal parts to *cy pres* recipients Hoag Hospital Foundation and Himalayan Cataract Project, Inc.,[2] or any other *cy pres* recipient selected by the Parties and approved by the Court. This *cy pres* payments from the Settlement Fund will be after all settlement costs and direct payments to the Settlement Class are paid.

In consideration for the Settlement Fund, Plaintiff, on behalf of the proposed Settlement Class ("Class"), will dismiss the Litigation and release and discharge Keeler and other Released Parties from all claims relating to the Litigation.

While Plaintiff is confident of a favorable determination on the merits, it has

---

[2] Both entities are 501(c)(3) non-profit organizations.

2

determined that the proposed Settlement provides significant benefits to the Settlement Class and is in the best interests of the Settlement Class.  Plaintiff also believes that the Settlement is appropriate because Plaintiff recognizes the expense and amount of time required to continue to pursue the Litigation, the uncertainty, risk, and difficulties of proof inherent in prosecuting such claims, and the challenges of collecting a judgment.  Similarly, as evidenced by the Agreement, Keeler believes that it has substantial and meritorious defenses to Plaintiff's claims, but has determined that it is desirable to settle the Litigation on the terms set forth in the Agreement.

Because Plaintiff believes that the proposed Settlement satisfies all of the criteria for preliminary approval, it  seeks an order preliminarily approving the proposed Settlement, provisionally certifying the Settlement Class under Federal Rule of Civil Procedure 23(b)(3) ("Rule 23(b)(3)") for settlement purposes, directing dissemination of Class Notice, and scheduling a Final Approval Hearing.

## II. STATEMENT OF FACTS.

### A. Factual background.

Keeler is a manufacturer of ophthalmic instruments and also sells ophthalmic medication. (Lehrman Decl. ¶ 25.)   It maintains a website with products advertised. (*Id.* ¶ 25.) During the Class Period, Keeler sent to telephone facsimile machines 5,581 unsolicited advertisements without proper opt-out notices in connection with its marketing campaigns. (*Id.* ¶ 26.)   Plaintiff alleged that Keeler violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), by sending to Plaintiff and the Class's telephone facsimile machines unsolicited advertisements that lacked proper opt-out notices. (Doc. 17 at 3 ¶¶ 12, 15, 20.)  Plaintiff contend that it and the Class are entitled to statutory damages under the TCPA.  Keeler has vigorously denies that it violated the TCPA, and pleaded seventeen affirmative defenses. (Doc. 20 ¶¶ 25, 41-57.)

3

1

### B. Proceedings to date.

2

#### 1. Litigation.

3 On August 3, 2018, after receiving a fax advertising 3mL eye drops, Plaintiff

4 filed a Class Action Junk-Fax Complaint, alleging both non-willful and willful

5 violations of the TCPA based on unsolicited facsimile advertisements. (Docs. 1 &

6 1-1.) Plaintiff seeks $500 per non-willful violation and $1,500 for each knowing

7 or willful violation, as well as injunctive relief. (Doc. 1 at 10.) Plaintiff's claim

8 was brought on behalf of a class of individuals who allegedly received from Keeler

9 unsolicited facsimile advertisements. (Doc. 1.) The Parties stipulated to extend

10 the time for Keeler to respond to the complaint to for Plaintiff to move for class

11 certification. (Doc. 10.) Keeler then moved to strike Plaintiff's class allegations.

12 (Docs. 13, 13-1.) Before Keeler's motion to strike was adjudicated, Plaintiff

13 amended its complaint. (Doc. 17.) Keeler answered the amended complaint and

14 pleaded seventeen affirmative defenses. (Doc. 20.) The Parties submitted a joint

15 proposed scheduling plan. (Doc. 21.) They also made their initial disclosures. On

16 December 13, 2018, Plaintiff served a Rule 30(b)(6) deposition notice on

17 Defendant. The Parties served each other with written discovery requests. The

18 parties produced documents responsive to their respective requests. On February

19 13, 2019, Plaintiff's counsel sent Defendant's counsel a written request for a pre-

20 filing conference concerning Defendant's document production. Thereafter the

21 parties conferred and Defendant supplemented its production to address the issues

22 raised by Plaintiff. On February 22, 2019, the Court entered a Scheduling Order

23 and referred the case to private mediation. (Doc. 22 ¶ 5.) The Parties stipulated to

24 a protective order governing discovery, and the Court granted the stipulation.

25 (Docs. 24, 30.) (Lehrman Decl. ¶¶ 21-22.)

26

#### 2. Mediation.

27 The Parties agreed to all-day mediation in Philadelphia, where Keeler is

28 located. (Lehrman Decl. ¶ 23.) They attended all-day mediation with an

4

experienced mediator, Bennett G. Picker, on April 23, 2019.  (*Id.*)  Mediation was a success, but the Parties engaged in continued negotiations in order to agree to the Settlement.  (*Id.*)  As set forth below, Plaintiff requests that the Court approve the Settlement.

**C.**   **Statement of Facts.**

**1.**   **The Class.**

**a.**   **The Class definition.**

The "Class" is defined in the Agreement as follows:

> all persons or business entities in the United States who from August 3, 2014, until the date of preliminary approval were sent an unsolicited telephone facsimile message of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of Defendant.

(Agreement § 10.7.)

**b.**   **Class membership determination.**

The Class consists of all persons who were sent Keeler's facsimile advertisements during Class Period, as stated above.  (*Id.*)  Based on documents produced by Keeler in discovery, the number of successful fax transmissions is approximately 5,581. (Lehrman Decl. ¶ 29.)

**2.**   **Settlement Payment.**

Under the Proposed Settlement, Keeler agrees to establish a $310,000 Settlement Fund to fund (1) Settlement Administration Costs; (2) attorneys' fees, costs, and expenses to Class Counsel, as approved by the Court; (3) an incentive award, if any, to the Representative Plaintiff; (4) Class recovery on a pro rata basis up to $1,500 each to Class Members who submit a Valid Claim Form; and (5) any *cy pres* distribution.  (Agreement § 10.35.)  The amount of the Settlement Fund shall not be reduced as a result of any members of the Class electing to opt out or be excluded from the Settlement or for any other reason. (*Id.* § 10.35.2.)

### 3.   Monetary benefit to Class Members and Class Notice.

The Settlement Agreement provides for $310,000 in cash benefits (minus Settlement Administrations Costs, attorneys' fees, costs, and expenses, and any incentive awards) to Class Members on a pro rata basis after the claims period. There are approximately 5,581 Class Members with unique facsimile numbers that received facsimile advertisements from Keeler.  The Claims Administrator will provide notice first via First Class U.S. Mail within 20 days of the Preliminary Approval Order.  (*Id.* § 12.2.)  Claims Forms will also be available on the Settlement Website and may be submitted online.

The Claim Period will be the period of 60 days from the initial mailing of Class Notice to the Class by the Settlement Administrator.  (*Id.* § 10.5.)

Class Members who Opt Out, must postmark and mail to the Settlement Administrator a request to opt out before the Objection Deadline, which will be 65 days following entry for the Preliminary Approval Order (*id.* § 12.6); and the deadline to Opt Out and Object will be 60 days after mailing of the Class Notices (*id.* § 12.7).

Class Members who file a Claims Form and do not Opt Out or Object will each receive a pro-rata share of up to $1,500.  After Settlement Administration Costs, any attorneys' fees, costs, and expenses to Class Counsel, and any Class Representative Award, it is estimated there will be approximately $190,542 for the Settlement Class to be distributed pro-rata. If each Class Member filed a Claims Form and did not Opt Out or Object, then each one would receive approximately $34.  If, more realistically, ten percent of the Class Members (558 members) filed Claims Forms, they would receive approximately $341 each. (Lehrman Decl. ¶ 34.) The anticipated settlement amount to class members compares favorably to numerous similar TCPA class action settlements which have been approved by courts within the Ninth Circuit and California in particular.  Below is a chart of

similar TCPA class action settlements that have received approval, including the value to each proposed class member for the respective case. (*Id.* ¶ 34.)

| Case and No. | Size of Class | Settlement Amount | Value per Class Member |
|---|---|---|---|
| *Robles v. Lucky Brand Dungarees, Inc.* Case No. 3:10-cv-04846 (NDCA) | 216,000 | $9.9 Million | $100 maximum |
| *Adams v. AllianceOne, Inc.* Case No. 08-cv-0248 (SDCA) | 5.63 Million | $9 Million | $40 maximum |
| *Hartman v. Comcast Business Communications* 2:10-cv-00413-RSL (WDWA) | 148,843 | $3.8 Million | $25.53 maximum |
| *Hovila v. Tween Brands, Inc.* 09-cv-00491-RSL (WDWA) | 100,000 | $5.33 Million Max | $20 Cash; or $45 Gift Certificate |
| *Clark v. Payless Shoesource, Inc.* 09-cv-00915-JCC | 8 Million | $6.25 Million | $25 Gift Certificate |
| *Cubbage v. The Talbots, Inc.* 09-cv-00911-BHS (WDWA) | 18,000 | $1.44 Million | $80 Gift Certificate ($40 Cash Value) |
| *In Re Jiffy Lube* 3:11-md-02261 | 2.3 Million | $47 Million | $17.29 Gift Certificate ($12.97 Cash Redemption) |

| Case and No. | Size of Class | Settlement Amount | Value per Class Member |
|---|---|---|---|
| *Bellows v. NCO Financial*<br><br>07-cv-1413-W(AJB) (SDCA) | Unknown, but in the thousands | $950,000 | $70 |
| *Lemieux v. Global Credit & Collection*<br><br>08-cv-1012-IEG(POR)(SDCA) | 27,844 | $505,000 | $70 |
| *Gutierrez v. Barclays Group*<br><br>10-cv-1012 (SDCA) | 66,100 | | $100 |
| *Arthur v. Sallie Mae, Inc.*<br><br>10-cv-0198 (WDWA) | | $24.15 Million | Between $20 and $40 |

### 4. Scope of Release.

All Class Members who do not request exclusion will be deemed to have release any claim against the Released Parties arising out of unsolicited facsimile advertisements sent by or on behalf of Keeler to telephone facsimile machines during the Class Period. (Agreement §§ 18.1, 18.4). The release of claims does not extend to claims beyond those that related specifically to conduct in the pleadings, i.e. the transmission of Keeler's facsimile advertisements.

### 5. Opportunity to opt out and object.

Class Members who Opt Out, must postmark and mail to the Settlement Administrator a request to opt out before the Objection Deadline, which will be 65 days following entry for the Preliminary Approval Order (Agreement § 12.6); and

the deadline to Opt Out and Object will be 60 days after mailing of the Class Notices (*id.* §§ 12.1, 12.2, 12.6, 12.7).

Any Class Member who does not opt out and objects to the proposed settlement must also mail its objections to the Court. (*Id.* § 12.7.)

### 6.    Payment of Notice and Administrative Costs.

Within 14 days of the Final Approval Date, Keeler will pay $310,000 into an escrow account held by the Settlement Administrator.  (Agreement §§ 15.2, 17)  The Settlement Administrator will use these funds to administer all costs of the settlement, including providing Class Notice, proving CAFA notice, maintaining the website and toll-free number and arranging for payments to Class Members.  The funds shall also be used to cover any Attorneys' Fee Award to Class Counsel and a Class Representative Award to Plaintiff.  (*Id.* § 10.35, 13.5, 13.6, 17.)

### 7.    Application for a Class Representative Award.

Class Counsel will request a Class Representative Award of $5,000 for Representative Plaintiff.  The Settlement Agreement, however, contains no "clear-sailing" provision as to an award.  (Agreement § 13.6.)

District Courts in California have opined that in many cases, an incentive award of $5,000 is presumptively reasonable.  *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266-67 (N.D. Cal. Mar. 20, 2015) (finding that $5,000 payment is presumptively reasonable); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942-43 (9th Cir. 2015) (finding that district court did not abuse its discretion in approving settlement class in antitrust class action, despite objector's contention that the nine class representatives were inadequate because their representatives' awards, at $5,000 each, were larger than the $12 each unnamed class member would receive); *In re Toys R Us – Delaware, Inc. – Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 472 (C.D. Cal. Jan. 17, 2014) (finding that request for $5,000 incentive award for each named plaintiff in consumers' Fair and Accurate Credit Transactions Act action

1   was reasonable; those awards were consistent with the incentive payments courts

2   typically awarded).

3          **8.     Class Counsels' application for attorneys' fees, costs, and**

4          **expenses.**

5          The Settlement Agreement expressly contains no "clear-sailing" provision

6   as to Class Counsel's compensation, i.e., Keeler has the right to object.

7   (Agreement § 13.5.)  Class Counsel state that they intend to apply for an award of

8   attorneys' fees in the amount of  to $77,500 (i.e., 25% of the $310,000 Settlement

9   Fund), plus costs and expenses.

10         **9.     *Cy pres* distributions.**

11         Based upon Class Counsel's estimates, so long as at least 127 Class

12  Members submit a Valid Claim Form, there will be no *cy pres* distributions based

13  on a pro rata increase, because each such Class Member would receive $1,500.  If

14  the claims rate is low, e.g., 2.3 percent, then the two *cy pres* recipients would

15  share a distribution.  (Agreement § 10.35.2.)  Under the proposed Settlement,

16  there will be a *cy pres* distribution as to any uncashed checks.  (*Id.* § 15.2.)

17  **III.   ARGUMENT**

18  **A.     The legal standards for preliminary approval of a class action**

19  **settlement.**

20         "The claims, issues, or defenses of a certified class—or a class proposed to

21  be certified for purposes of settlement—may be settled, voluntarily dismissed, or

22  compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  Judicial

23  proceedings under Rule 23 have led to a defined procedure and specific criteria for

24  settlement approval in class action settlements, described in the *Manual for*

25  *Complex Litigation* (Fourth) (Fed. Judicial Center 2004) ("*Manual*") §§ 21.63, *et*

26  *seq.*, including preliminary approval, dissemination of notice to class members,

27  and a fairness hearing.  *Manual*, §§ 21.632, 21.633, 21.634. The purpose of the

28  Court's preliminary evaluation of the settlement is to determine whether it is

1    within the "range of reasonableness" and thus whether notice to the class of the

2    terms and conditions of the settlement, and the scheduling of a formal fairness

3    hearing, are worthwhile.  *See* 4 Herbert B. Newberg, *Newberg on Class Actions*

4    §§ 11.25, *et seq*., and § 13.64 (4th ed. 2002 and Supp. 2004) ("*Newberg*").   The

5    Court is not required to undertake an in-depth consideration of the relevant factors

6    for final approval. Instead, the "judge must make a preliminary determination on

7    the fairness, reasonableness, and adequacy of the settlement terms and must direct

8    the preparation of notice of the certification, proposed settlement, and date of the

9    final fairness hearing." *Manual*, § 21.632 (4th ed. 2004).

10          As a matter of public policy, settlement is a strongly favored method for

11   resolving disputes.  *See Utility Reform Project v. Bonneville Power Admin*., 869

12   F.2d 437, 443 (9th Cir. 1989).   This is especially true in class actions such as this.

13   *See Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982).   As a

14   result, courts should exercise their discretion to approve settlements "in recognition

15   of the policy encouraging settlement of disputed claims." *In re Prudential Sec. Inc.*

16   *Ltd. Partnerships Litig*., 163 F.R.D. 200, 209 (S.D.N.Y. 1995).   To make the

17   preliminary fairness determination, courts may consider several relevant factors,

18   including "the strength of the plaintiff's case; the risk, expense, complexity, and

19   likely duration of further litigation; the risk of maintaining class action status

20   through trial; the amount offered in settlement; the extent of discovery completed

21   and the stage of the proceedings; [and] the experience and views of counsel." *See*

22   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("*Hanlon*").

23   Furthermore, courts must give "proper deference to the private consensual decision

24   of the parties," since "the court's intrusion upon what is otherwise a private

25   consensual agreement negotiated between the parties to a lawsuit must be limited

26   to the extent necessary to reach a reasoned judgment that the agreement is not the

27   product of fraud or overreaching by, or collusion between, the negotiating parties,

28

11

1  and that the settlement, taken as a whole, is fair, reasonable and adequate to all
2  concerned." *Id.* at 1027.

3      Preliminary approval does not require the Court to make a final
4  determination that the settlement is fair, reasonable, and adequate.  Rather, that
5  decision is made only at the final approval stage, after notice of the settlement has
6  been given to the class members and they have had an opportunity to voice their
7  views of the settlement or to exclude themselves from the settlement.  *See* 5 James
8  Wm. Moore, *Moore's Federal Practice – Civil* § 23.165[3] (3d ed.).  Thus, in
9  considering a potential settlement, the Court need not reach any ultimate
10 conclusions on the issues of fact and law which underlie the merits of the dispute,
11 *West Va. v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1086 (2d Cir. 1971), and need not
12 engage in a trial on the merits, *Officers for Justice v. Civil Service Comm'n,*  688
13 F.2d at  625.  Preliminary approval is merely the prerequisite to giving notice so
14 that "the proposed settlement . . . may be submitted to members of the prospective
15 class for their acceptance or rejection." *Philadelphia Hous. Auth. v. Am. Radiator*
16 *& Standard Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970).

17     Preliminary approval of the settlement should be granted if, as here, there
18 are no "reservations about the settlement, such as unduly preferential treatment of
19 class representatives or segments of the class, inadequate compensation or harms
20 to the classes, the need for subclasses, or excessive compensation for attorneys."
21 *Manual for Complex Litigation* § 21.632, at 321 (4th ed. 2004).

22      Furthermore, the opinion of experienced counsel supporting the settlement
23 is entitled to considerable weight.  *See, e.g.*, *Kirkorian v. Borelli*, 695 F.Supp. 446
24 (N.D. Cal. 1988) (opinion of experienced counsel carries significant weight in the
25 court's determination of the reasonableness of the settlement); *Boyd v. Bechtel*
26 *Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of plaintiffs'
27 counsel should be given a presumption of reasonableness).

28

1
2
3
4
5
6
7

The decision to approve or reject a proposed settlement "is committed to the sound discretion of the trial judge." *See Hanlon*, 150 F.3d at 1026. This discretion is to be exercised "in light of the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," which minimizes substantial litigation expenses for both sides and conserves judicial resources. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quotations omitted).

8
9
10

Based on these standards, Plaintiff submits that, for the reasons detailed below, the Court should preliminarily approve the proposed Settlement as fair, reasonable, and adequate.

11
12

**B.**   **Liability is highly contested and both sides face significant challenges in litigating this case.**

13
14
15
16
17
18
19
20
21

Keeler has vigorously contested the claims asserted by Plaintiff in this Litigation.   Moreover, Keeler maintained that Plaintiff's claims could be not certified as a class action if this case were to proceed in litigation.   Keeler contended, among other alleged deficiencies, that Plaintiff's proposed class is not ascertainable, that individual issues predominate over any common ones, and that a class action would be neither superior nor manageable.   Keeler has raised seventeen affirmative defenses, including consent, a contention that the TCPA does not apply to faxes received through computer programs, failure to "opt opt" of receiving facsimile transmissions, and lack of standing.  (Doc. 20 ¶¶ 41-57.)

22
23
24
25

In considering the Settlement, Plaintiff and Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation, against the benefits to the Class.  As a result, Class Counsel support the Settlement and seek its preliminary approval. (Lehrman Decl. ¶ 36.)

26
27

While Keeler believes that it has strong and meritorious defenses not only to the action as a whole, but also as to class certification and the amount of

28

damages sought, Keeler recognizes that if a class were certified, the damages could be significantly higher than the settlement amount. (*Id.* ¶ 37.)

The negotiated Settlement reflects a compromise between avoiding that risk and the risk that the class might not recover. Because of the costs, risks to both sides, and delays of continued litigation and potential appeals, the Settlement presents a fair and reasonable alternative to continuing to pursue the Litigation.

**C.    Defendant's agreement to finance the common benefit fund provides a fair and substantial benefit to the Class.**

As set forth above, Keeler has agreed to pay $310,000 to fund the settlement, which includes notice and claims administration costs, creating and maintaining a Settlement Website and toll-free number, providing CAFA notice, any Class Representative Award, and attorneys' fees, costs, and expenses.

**D.    The Settlement was reached through arm's-length negotiation, without collusion, with the assistance of a mediator.**

The proposed Settlement is the result of intensive arm's-length negotiation, including an all-day mediation session before an experienced mediator on April 23, 2019. (Lehrman Decl. ¶ 38.) With the mediator's guidance, and working independently thereafter, the Parties reached a proposed resolution. (*Id.* ¶ 38.) The time and effort spent examining and investigating the claims militate in favor of preliminary approval of the proposed Settlement, as the process strongly indicates that there was no collusion. *See In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.").

**E.    Experienced counsel have determined that the Settlement is appropriate and fair to the Class.**

The Parties are represented by counsel experienced in complex class action litigation. (Lehrman Decl. ¶ 39; Eisenberg Decl. ¶¶ 7-8, 11, 23.) Class Counsel have extensive experience in class actions, as well as particular expertise in class

14

actions relating to consumer protection and specifically the TCPA. (Lehrman Decl. ¶ 40.)  Class Counsel—who have litigated numerous TCPA class actions—believe that under the circumstances, the proposed Settlement is fair, reasonable, and adequate and in the best interests of the Class Members.  (*Id*. ¶ 41.)

F. **The Court should preliminarily certify the Class for purposes of settlement.**

Courts have long acknowledged the propriety of class certification for purposes of a class action settlement. *See In re Wireless Facilities*, 253 F.R.D. at 610 ("Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes"). Certification of a class for settlement purposes requires a determination that certain requirements of Rule 23 are met.  *Id.*  As explained below, class certification is appropriate here because the Proposed Settlement meets the requirements of Rule 23(a) and (b)(3) for settlement purposes.

G. **The proposed Class in the thousands is numerous.**

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be impracticable.  "Impracticability does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted).  "[N]umerosity is presumed where the plaintiff class contains forty or more members."  *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009). Here, the Settlement Class consists of 5,581 recipients of Keeler's facsimile advertisements during the Class Period. (Lehrman Decl. ¶ 30.)  Thus, the proposed Class is sufficiently numerous.

H. **The commonality requirement is satisfied, because common questions of law and fact exist.**

The commonality requirement is met if there are questions of law and fact common to the class. *Hanlon*, 150 F.3d at 1019 ("The existence of shared legal

15

1  issues with divergent legal factual predicates is sufficient, as is a common core of
2  salient facts coupled with disparate legal remedies within the class."). Here, for
3  purposes of settlement, the proposed Class Members' claims stem from the same
4  factual circumstances, specifically the sending of Keeler's allegedly unsolicited
5  facsimile advertisements without proper opt-out notices during the Class Period.
6  (Lehrman Decl. ¶ 31.)

7       Plaintiff's claims also present questions of law that are common to all
8  members of the Class for settlement purposes, including (1) whether Keeler's fax
9  advertisements contained the opt-out notice required by the TCPA; (2) whether
10 Keeler's fax advertisements violated the TCPA; (3) whether Keeler willfully or
11 knowingly violated the TCPA; and (4) whether statutory damages per facsimile or
12 per violation of the TCPA applies.   (Doc. 17 ¶ 31.b.) The Settlement Class
13 Members all seek the same remedy.   Under these circumstances, the commonality
14 requirement is satisfied for certifying a settlement class.  *See Hanlon,* 150 F.3d at
15 1019-20.

16      **I.    <u>The typicality requirement is met.</u>**

17      The typicality requirement is met if the claims of the named representatives
18 are typical of those of the class, though "they need not be substantially identical."
19 *Hanlon,* 150 F.3d at 1020.  For purposes of settlement, Plaintiff's claim is typical
20 of the Class because the claims arise from the same factual basis—unsolicited
21 facsimile advertisements—and are based on the same legal theory, i.e., the faxes
22 allegedly violated the TCPA.  *See Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644
23 (N.D. Cal. 1987).  The Class Representative claims that they received unsolicited
24 fax advertisements from Keeler and that the faxes lacked proper opt-out notices.
25 (Doc. 17 ¶¶ 25-26.)  Accordingly, the Class Representative's claim is typical of
26 those of the Settlement Class. Thus, the typicality requirement is satisfied for
27 purposes of certifying a settlement class.

28

1

## J.        The adequacy requirement is satisfied.

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The Court must measure the adequacy of representation by two standards: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Wireless Facilities*, 253 F.R.D. at 611 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003)).

Plaintiff and Class Counsel have no conflicts of interest with other Class Members because, for purposes of the Settlement, Plaintiff's claim is typical of those of other Settlement Class Members. In addition, Class Counsel have done work in identifying potential claims in the action and filed suit under the TCPA, which specifically addresses unsolicited faxes.  Class Counsel are experienced in handling class actions, other complex litigation, and the types of claims asserted in the action and have litigated numerous TCPA fax class actions.  Through those cases they have gained knowledge of the applicable law.  Class Counsel have committed and will commit resources to representing the Class. (Lehrman Decl. ¶¶ 45-46; Eisenberg Decl. ¶¶ 22-23, 27.)

Plaintiff and Class Counsel have been prosecuting this litigation vigorously on behalf of the Class.  Plaintiff and Class Members share the common goal of protecting and improving privacy rights throughout the nation, and there is no conflict among them.  (Lehrman Decl. ¶¶ 47-48; Eisenberg Decl. ¶¶ 24-25.)  Class Counsel are qualified to represent the interests of the Class.  Rule 23(a)(4) is therefore satisfied for purposes of certifying a settlement class.

17

**K.** **Common questions predominate, sufficient to certify a Class for settlement purposes only.**

Class certification under Rule 23(b)(3) is appropriate where "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). Central to this question is "'the notion that the adjudication of common issues will help achieve judicial economy.'" *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir.) (citation omitted), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001)

Here the central inquiry for purposes of the proposed Settlement is whether Keeler violated the TCPA by sending faxes to Plaintiff and Class Members without permission, whether the faxes sent to Plaintiff and Class Members required an opt-out notice, and whether the fax caused concrete injury. (Doc. 17 at 4-7.) "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

**L.** **Class treatment for settlement purposes is superior to individual resolutions.**

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court must compare a class action with alternative methods for adjudicating the parties' claims. Lack of a viable alternative to a class action necessarily means that a class action satisfies the superiority requirement. "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied."

18

*Culinary/Bartenders Trust Fund*, 244 F.3d at 1163; *see also Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("[A] class action is a superior method for managing litigation if no realistic alternative exists").

Consideration of the factors listed in Rule 23(b)(3) supports the conclusion that, for purposes of a settlement class, certification is appropriate. Ordinarily, these factors are (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

However, when a court reviews a class action settlement, the fourth factor does not apply. In deciding whether to certify a settlement class action, a district court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prods. Inc. v. Woodward*, 521 U.S. 591, 620 (1997). "With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious." *Elkins v. Equitable Life Ins. of Iowa*, No. Civ A96-296-Civ-T-17B, 1998 WL 133741, at *20 (M.D. Fla. Jan. 27, 1998); *see also Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (Rule 23(b)(3)(C) and (D) factors are "'conceptually irrelevant in the context of settlement'") (citation omitted). Here, the Rule 23(b)(3)(A), (B) and (C) factors all favor class certification:

- Any Settlement Class Member who wishes to pursue a separate action can opt out of the Settlement.
- There is no competing litigation regarding claims at issue.
- Plaintiff believes this forum is appropriate, and Keeler does not oppose the forum.

19

**M.** **The proposed Class Notice is consistent with Rule 23 and the Ninth Circuit requirements and provides adequate notice for claims, objections and opt outs.**

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must order the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). "The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii). Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received." *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). Rather, notice must be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.

Pursuant to Rule 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B) sets forth requirements as to the content of the notice. The notice must concisely and clearly state in plain, easily understood language (i) the nature of the action; (ii) the definition of the class; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a

20

1  class judgment on class members under Rule 23(c)(3).    Fed. R. Civ. P.

2  23(c)(2)(B).

3        The Settlement Administrator shall disseminate the Class Notice in a form

4  materially consistent with Exhibit A to the Agreement.   The Class Notice here

5  satisfies each of the requirements of Rule 23(c)(2)(B) above.   Further, mailed

6  notice has routinely been held to be adequate notice to a Settlement Class.   *See*

7  *Schaffer v. Litton Loan Servicing, LP*, No. CV 05-07673 MMM JCX, 2012 WL

8  10274679, at *8 (C.D. Cal. Nov. 13, 2012) (approving notice plan where class

9  members were sent postcards that directed them to a settlement website); *Lo v.*

10 *Oxnard European Motors, LLC*, No. 11CV1009 JLS MDD, 2012 WL 1932283, at

11 *1 (S.D. Cal. May 29, 2012) (final approval of class settlement using postcard

12 notice and settlement website).

13       Following preliminary approval, Defendant will create and deliver a list of

14 Class Members to Class Counsel and the Settlement Administrator. (Agreement §

15 12.1.) The Settlement Administrator will employ reverse telephone look-up

16 procedures to identify the subscriber names and physical addresses associated

17 with the facsimile numbers identified on the Class List. (*Id*. § 12.3.)    The

18 Settlement Administrator will run the names and addresses obtained via this

19 process through the National Change of Address database.  (*Id*. § 12.3.)  To the

20 extent any physical address identified through reverse look-up is no longer valid,

21 the Settlement Administrator will send Class Notice to any forwarding address

22 that is provided. (*Id*. § 12.3.)   *See generally Barani v. Wells Fargo Bank, N.A.*,

23 No. 12CV2999-GPC KSC, 2014 WL 1389329, at *10 (S.D. Cal. Apr. 9, 2014)

24 (approving settlement in TCPA class action using reverse lookup to locate class

25 members).

26       The Settlement Administrator will publish a Settlement Website within

27 fourteen days of entry of a Preliminary Approval Order. The Settlement Website

28 will contain the Preliminary Approval Order, Long Form Notice, Settlement

Agreement, Claim Form, and Class Counsel's motion for an award of attorneys' fees and expenses and for a Class Representative Award. (*Id*. § 12.9.) Accordingly, Settlement Class Members will have sufficient time after dissemination of Class Notice has been completed to opt out of the settlement or object. *Cf. Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1374-1375 (9th Cir. 1993) (31 days is more than sufficient, as Class as a whole had notice adequate to flush out whatever objections might reasonably be related to the settlement) (citing *Marshall v. Holiday Magic, Inc*., 550 F.2d 1173, 1178 (9th Cir. 1977) (approving timing of notice which was mailed 26 days before the deadline for opting out of the settlement)). Further, the Settlement Website shall be maintained and accessible to permit the online submission of claims and posting of any subsequent notices. (*Id*. § 12.9.)

This notice program—centered on direct-mail notice—was designed to meaningfully reach the largest number of Settlement Class Members possible. Since the faxes at issue were sent within the past few years, mailed notice will likely reach most Settlement Class Members.

The concurrent dissemination of the Long Form Class Notice on the Settlement Website, combined with the Class Notice, satisfies the requirements of due process and constitutes the best notice practicable under the circumstances.

The Settlement Administrator shall prepare and file a declaration prior to the Final Approval Hearing certifying that the notice program has been properly administered in accordance with this Agreement, this Court's Orders, and as described herein.

**N.** **The Court should preliminarily certify the Class for purposes of settlement.**

"[T]wo criteria for determining the adequacy of representation have been recognized. First, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must

22

not have antagonistic or conflicting interests with the unnamed members of the class." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). The adequacy of representation requirement is met here. For settlement purposes, Class Counsel move for Plaintiff Retina Associates, Inc., to be appointed preliminarily as the Class Representative. Class Counsel request that Seth Lehrman of Edwards Pottinger LLC and Ronald J. Eisenberg of Schultz & Associates LLP preliminarily be appointed as Class Counsel for purposes of the Settlement. Plaintiff's counsel has extensive experience sufficient to be appointed as Class Counsel. Plaintiff understands the obligations of serving as a class representative, have adequately represented the interests of the putative class, and have retained experienced counsel. Plaintiff has no antagonistic or conflicting interests with the Settlement Class, and all members of the Settlement Class are eligible for the same benefits.

## O.  The Court should appoint Kurtzman Carson Consultants, LLC, as the Settlement Administrator.

The proposed Agreement recommends that the Court appoint Kurtzman Carson Consultants, LLC, to serve as the Settlement Administrator, because that company specializes in providing administrative services in class action litigation, and has extensive experience in administering TCPA class action settlements. (Agreement § 10.34.) Keeler does not oppose this request.

## P.  The Final Approval Hearing should be scheduled

The last step in the settlement approval process is the formal fairness or Final Approval Hearing, at which time the Court will hear all evidence and argument, for and against, the proposed Settlement. Plaintiff requests that the Court grant preliminary approval of the Settlement and schedule a Final Approval Hearing to be held at least 90 days after the date of entry of the Preliminary Approval Order, in order to allow sufficient time for providing CAFA notice, the

toll-free number and the Settlement Website, and completion of the period for class members to submit exclusion requests and objections.

## IV. CONCLUSION

For all the foregoing reasons, Plaintiff Retina Associates, Inc., requests that the Court enter an Order preliminarily approving the proposed Settlement and certifying a class for settlement purposes.

Date: June 27, 2019                                 EDWARDS POTTINGER LLC

                                                    By: */s/ Seth M. Lehrman*
                                                        SETH M. LEHRMAN
                                                        *Attorney for Plaintiff*


## CERTIFICATE OF SERVICE

Filed electronically on this 27th day of June, 2019, with:

United States District Court CM/ECF system

Notification sent electronically on this 27th day of June, 2019, to:

Honorable Cormac J. Carney
United States District Court
Central District of California

Karen S. Hockstad
Joseph S. Levanthal
Vladimir P. Belo

/s/ Seth M. Lehrman, Esq.