Seth M. Lehrman (178303)
seth@epllc.com
EDWARDS POTTINGER LLC
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone: 954-524-2820
Facsimile:  954-524-2822

Ronald J. Eisenberg (*Pro Hac Vice*)
reisenberg@sl-lawyers.com
SCHULTZ & ASSOCIATES LLP
640 Cepi Drive, Suite A
Chesterfield, MO 63005
Telephone: 636-537-4645
Facsimile: 636-537-2599

Attorneys for Plaintiff
Retina Associates Medical Group, Inc.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| **RETINA ASSOCIATES MEDICAL GROUP, INC., individually and on behalf of all others similarly situated,** | **Case No.: 8:18-cv-01358-CJC-DFM** |
| | **CLASS ACTION** |
| Plaintiff, | |
| v. | **PLAINTIFF'S NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS-ACTION SETTLEMENT** |
| **KEELER INSTRUMENTS, INC.,** | |
| Defendant. | Judge:    Hon. Cormac J. Carney |
| | Date:    December 2, 2019 |
| | Time:    1:30 P.M. |
| | Courtroom:  7C |
| | [Filed and Served Concurrently with Proposed Order] |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 2, 2019, at 1:30 p.m., before the United States District Court, Central District of California, Southern Division, Courtroom 7C, 350 W. 1st Street, Los Angeles, CA 90012 (7th Floor), Plaintiff Retina Associates Medical Group, Inc., will move for an order granting final approval of the class action settlement and certification of the settlement class as detailed in Plaintiff's Memorandum of Points and Authorities.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, exhibits thereto, the Complaint, all other pleadings and papers on file in this action, and upon such other evidence and arguments as may be presented at the hearing on this matter.

Date: November 4, 2019                    **EDWARDS POTTINGER LLC**

By: */s/ Seth M. Lehrman*
SETH M. LEHRMAN
Attorney for Plaintiff

**CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7-3**

Plaintiff's counsel certifies that prior to filing the instant motion, the parties, through counsel, met and conferred pertaining to the subject matter of the instant motion. Defendant does not oppose this motion.

Date: November 4, 2019                    **EDWARDS POTTINGER LLC**

By: */s/ Seth M. Lehrman*
SETH M. LEHRMAN
Attorney for Plaintiff

1
2

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................ i

TABLE OF AUTHORITIES ................................................................ iii

MEMORANDUM OF POINTS & AUTHORITIES.............................1

   I.    INTRODUCTION. ..........................................................................1

   II.   STATEMENT OF FACTS.................................................................1

      A.   Factual background.................................................1

      B.   Proceedings to date .................................................2

        1. Litigation......................................................2

        2. Mediation. ....................................................3

      C.   Statement of Facts..................................................3

        1. The Class......................................................3

          a.   The Class Definition ...........................3

          b.   Class membership determination. ............3

        2. Settlement Payment .......................................4

        3. Money benefit to Class Members and Class Notice. ........4

   III.  ACTIVITY IN THE CASE AFTER PRELIMINARY APPROVAL............4

      A.   CAFA Notice .........................................................4

      B.   Direct Mail Notice .................................................5

      C.   Formal notice posted on the Settlement Website..............5

      D.   Objections, opt outs, and settlement payouts...................5

        1. No objections or opt outs.................................5

        2. Settlement checks..........................................6

        3. Class Representative incentive award. .................6

        4. Class Counsels' Application for Attorneys' Fees, Costs and Expenses ............................................7

        5. Administrator's expenses for Notice and Adminstration ..............................................7

**IV. ARGUMENT** ......................................................................**7**

    **A.** **Final approval of the proposed settlement is warranted .7**

        **1. The strengh of the Lawsuit and the risk, expense,
complexity, and likely duration of further litigation. .9**

        **2. The amount offered in the Settlement. ...........................10**

        **3. Class Members were provided with the best notice
practicable, which afforded them an opportunity to
choose whether to participate in the Settlement........11**

        **4. The extended discovery completed .................................12**

        **5. The experiece and views of Class Counsel .....................13**

        **6. The positive reaction of Class  Members  to  the
Settlement. ...................................................................14**

**V. CONCLUSION** ..................................................................**14**

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. Mar. 20, 2015) 6, 7

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)............................13

*Cox v. Clarus Mktg. Grp., LLC*, 291 F.R.D. 473 (S.D. Cal. 2013) .........................6

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd* 661

   F.2d 939 (9th Cir. 1981)..............................................................................8, 13

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) .........................................................8

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ......................................8

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) .............14

*In re Diamond Foods, Inc.*, Sec. Litig., No. C 11-05386 WHA,

   2014 WL 106826, (N.D. Cal. Jan. 10, 2014) ....................................................6

*In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008)).........6

*In re Warner Communications Sec. Litig.*, 618 F. Supp. 735

   (S.D. N.Y. 1985) ....................................................................................8, 12, 13

*Kmiec v. Powerwave Techs., Inc.*, No. SACV1200222CJCJPRX,

   2016 WL 5938709 (C.D. Cal. July 11, 2016)...................................................14

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998).........................12

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F.Supp. 819, 822

   (D. Mass. 1987) .........................................................................................8, 13

*Miller v. CEVA Logistics USA, Inc.*, No. 2:13-CV-01321-TLN, 2015 WL 4730176

   (E.D. Cal. Aug. 10, 2015)..................................................................................10

*National Rural Tel. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ...10

*Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982) ........7, 8

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ........................8

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994).....................................................11

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ................................................8

*Steinfeld v. Discover Fin. Servs.*, No. C 12-01118 JSW, 2014 WL 1309352

  (N.D. Cal. Mar. 31, 2014) ......................................................................14

*Torrisi v. Tucson Elec Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ...........................8

**Statutes**

28 U.S.C. § 1715................................................................................................4

47 U.S.C. § 227 ..................................................................................... *passim*

Fed. R. Civ. P. 23(b)(3).....................................................................................11

Fed. R. Civ. P. 23(c)(2)(B) ...............................................................................11

Fed. R. Civ. P. 23(e)(1)(C) .................................................................................7

**Other Authorities**

*Federal Judicial Ctr., Judges' Class Action Notice & Claims Process Checklist &*

  *Plain Language Guide 3* (2010)........................................................................12

*2 Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002) ...............................13

Manual for Complex Lit., Fourth § 30.42 ...........................................................13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS & AUTHORITIES

**I.    INTRODUCTION.**

On July 7, 2019, this Court preliminarily approved the Settlement Agreement ("Agreement" or "Settlement") (Ex. 1) reached between Plaintiff Retina Associates Medical Group, Inc. ("Plaintiff" or "Retina Associates"), and Defendant Keeler Instruments, Inc. ("Defendant" or "Keeler"), in this junk-fax class action under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227. Simultaneously, this Court directed Notice to be disseminated to the Settlement Class. The Notice plan approved by the Court has now been implemented and direct notice has reached at least 94% of the Settlement Class. The response from the Settlement Class has been unanimously positive. Not one of the 3,937 members of the Settlement Class objected or opted out.

The Settlement, which resulted from the parties' participation in an all-day mediation session in Philadelphia before a respected mediator, provides for the considerable financial benefit of a non-reversionary $310,000 ("Settlement Fund") to the "Settlement Class," which consists of all persons or business entities in the United States who were sent an unsolicited telephone facsimile message of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of Defendant on or after August 3, 2014 ("Class Period"). Although claims will continue to arrive until the December 10, 2019 Claims Deadline, based on the number of valid claims received thus far, each Class Member who submits such a claim is estimated to receive $1,397.41.

Plaintiff now moves for final approval of this outstanding Settlement. Defendant does not oppose the motion.

**II.    STATEMENT OF FACTS.**

**A.    Factual background.**

Defendant is a manufacturer of ophthalmic instruments and also sells ophthalmic medication. (*See* Lehrman Decl. ¶ 27, attached hereto as Exhibit "A".)

1

It maintains a website with products advertised. (*Id.* ¶ 27.) During the Class Period, Defendant sent fax advertisements in connection with its marketing campaigns. (*Id.* ¶ 28.) Plaintiff contends that these were unsolicited fax advertisements. (*Id.* ¶ 29) Plaintiff alleged that Defendant violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), by sending to Plaintiff's and the Class's telephone facsimile machines unsolicited advertisements that lacked proper opt-out notices. (*Id.* ¶ 29.) (Doc. 17 at 3 ¶¶ 12, 15, 20.) Plaintiff contends that it and the Class are entitled to statutory damages under the TCPA. Defendant has vigorously denied that it violated the TCPA, and pleaded seventeen affirmative defenses. (*Id.* ¶ 30.) (Doc. 20 ¶¶ 25, 41-57.)

**B.    Proceedings to date.**

**1.    Litigation.**

On August 3, 2018, after receiving a fax advertising eye drops, Plaintiff filed a Class Action Junk-Fax Complaint, alleging both non-willful and willful violations of the TCPA based on unsolicited facsimile advertisements. (Docs. 1 & 1-1.) Plaintiff seeks $500 per non-willful violation and $1,500 for each knowing or willful violation, as well as injunctive relief. (Doc. 1 at 10.) Its claim was brought on behalf of a class who also allegedly received unsolicited fax advertisements from Defendant. (Doc. 1.) The parties stipulated to extend the time for Defendant to respond to the complaint for Plaintiff to move for class certification. (Doc. 10.) Defendant then moved to strike Plaintiff's class allegations. (Docs. 13, 13-1.) Before that motion was adjudicated, Plaintiff amended its complaint. (Doc. 17.) Defendant answered the amended complaint and pleaded seventeen affirmative defenses. (Doc. 20.) The parties submitted a joint proposed scheduling plan. (Doc. 21.) They also made their initial disclosures. On December 13, 2018, Plaintiff served a Rule 30(b)(6) deposition notice on Defendant. The parties served each other with written discovery requests and produced responsive documents. On February 13, 2019, Plaintiff's counsel sent Defendant's counsel a written request

for a pre-filing conference concerning Defendant's document production. Thereafter the parties conferred and Defendant supplemented its production to address issues Plaintiff raised. On February 22, 2019, the Court entered a Scheduling Order and referred the case to private mediation. (Doc. 22 ¶ 5.) The parties stipulated to a protective order governing discovery, which the Court granted. (Docs. 24, 30.) (Lehrman Decl. ¶ 24.)

### 2. **Mediation.**

The parties engaged in all-day mediation with an experienced mediator, Bennett G. Picker, on April 23, 2019, in Philadelphia, where Defendant is located. (Lehrman Decl. ¶¶ 25, 26.) Mediation was a success, but the parties engaged in continued negotiations over the Settlement's terms. (*Id.*) As set forth below, Plaintiff requests that the Court approve the mediated Settlement.

### C. **Statement of Facts.**

### 1. **The Class.**

#### a. **The Class definition.**

The "Class" is defined in the Agreement as follows:

> all persons or business entities in the United States who from August 3, 2014, until the date of preliminary approval were sent an unsolicited telephone facsimile message of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of Defendant.

(Agreement § 10.7.)

#### b. **Class membership determination.**

The Class consists of all persons who were sent Defendant's facsimile advertisements during Class Period, as stated above. (*Id.*) Based on Excel spreadsheets that Defendant produced and work performed by the Settlement Administrator, Kurtzman Carson Consultants, LLC ("KCC"), to eliminate duplicate numbers, KCC determined the number of Class Members to be 3,937.

(Decl. of V. Fellner on Behalf of Settlement Admin. (*See* KCC Decl. ¶¶ 3-4, attached hereto as Exhibit "C".)

## 2. Settlement Payment.

Under the Proposed Settlement, Defendant agrees to establish a $310,000 Settlement Fund to fund (1) Settlement Administration Costs; (2) attorneys' fees, costs, and expenses to Class Counsel, as approved by the Court; (3) an incentive award, if any, to Plaintiff; (4) Class recovery on a pro rata basis up to $1,500 each to Class Members who submit a Valid Claim Form; and (5) any *cy pres* distribution.  (Agreement § 10.35.)  The amount of the Settlement Fund shall not be reduced as a result of any members of the Class electing to opt out or be excluded from the Settlement or for any other reason. (*Id.* § 10.35.2.) Any unclaimed funds from uncashed settlement checks, including settlement checks to Class Members who submit Valid Claim Forms but whose current valid addresses could not be determined shall be delivered in equal parts to *cy pres* recipients Hoag Hospital Foundation and Himalayan Cataract Project, Inc.[1]

## 3. Monetary benefit to Class Members and Class Notice.

The Settlement Agreement provides for $310,000 in cash benefits (minus Settlement Administration Costs, attorneys' fees, costs, and expenses, and any incentive award) to Class Members on a pro rata basis after the claims period.

## III. ACTIVITY IN THE CASE AFTER PRELIMINARY APPROVAL

The Claims Administrator's compliance is described below.

### A. CAFA Notice

On July 8, 2019, in compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, KCC mailed a cover letter to the U.S. Attorneys General and the Attorneys General for all 50 states and territories/other parties along with a CD-ROM containing the requisite documents. (KCC Decl. ¶ 2.)

---

[1] Both entities are 501(c)(3) non-profit organizations.

4

Class Counsel did not receive communications from any recipient of the CAFA Notice. (*See* Eisenberg Decl. ¶ 39, attached hereto as Exhibit "B".)

**B.   Direct Mail Notice**

KCC complied with the notice procedure set forth in the Preliminary Approval Order. (Doc. No. 36.) KCC sent notice via First Class U.S. Mail on August 12, 2019, to the 3,937 Class Members and on October 25, 2019, mailed the Class Notice and a Claim Form with a return envelope as a supplemental mailing to 3,881 Class Members who had not filed a claim. (KCC Decl. ¶¶ 7-8; Agreement § 12.2.)  The Class Notice reached approximately 94% of the total Class Member List. (KCC Decl. ¶ 9.)  This approach satisfies the due process requirements of sufficient reach to the Class.  Moreover, the Claim Period, following a joint stipulation, was extended until December 10, 2019, to afford Class Members additional time to submit timely valid forms. (Doc. No. 38.)

As of October 31, 2019, there have been 126 valid Claims made. (KCC Decl. ¶ 12.) After deduction of KCC's administration fees, estimated to be $43,142.72 (KCC Decl. ¶ 13), Class Counsel's requested fees of $77,500 and expenses and costs of $8,282.79, and a requested incentive award of $5,000, there will be approximately $176,074.49 available to distribute to the Class (Lehrman Decl. ¶ 48 ; Eisenberg Decl. ¶ 21).

**C.   Formal notice posted on the Settlement Website**

In compliance with the Preliminary Approval Order, KCC established a Settlement Website, www.RetinaTCPASettlement.com. On the website, visitors can view answers to frequently asked questions and download important case documents including the Claim Form.  (KCC Decl. ¶ 5.)

**D.   Objections, opt outs, and settlement payouts**

**1.   No objections or opt outs**

Class Members were provided with significant time to review the Settlement, make timely opt outs and objections.  Those who wished to opt out

5

1  had until September 25, 2019, to do so and those wishing to object had until
2  October 11 to do so. (KCC Decl. ¶¶ 10-11; Agreement § 12.7.)  There were zero
3  opt outs and zero objectors to the Settlement, whether timely or otherwise. (KCC
4  Decl. ¶¶ 10-11.)

5          The fact that there were not only no objections—despite direct notice and
6  the constant presence of an aggressive professional objectors' bar—but also no
7  opt outs, is a testament to the strength and fairness of the Settlement. *See In re*
8  *Diamond Foods, Inc., Sec. Litig.*, No. C 11-05386 WHA, 2014 WL 106826, at *2
9  (N.D. Cal. Jan. 10, 2014) (noting, as support for approval, that there had been only
10 29 requests to opt out of class and no objection to settlement or requested
11 attorney's fees and expenses); *Cox v. Clarus Mktg. Grp., LLC*, 291 F.R.D. 473,
12 481 (S.D. Cal. 2013) (fact that only 62 class members filed timely requests to opt
13 out indicates that vast majority of class members reacted favorably to the
14 proposed settlement).

15                     **2.    Settlement checks**

16         After deduction of KCC's administration fees, estimated to be $43,142.74
17 (KCC Decl. ¶ 13), Class Counsel's requested fees of $77,500 and expenses and
18 costs of $8.282.79, and a requested incentive award of $5,000, there will be
19 approximately $176,074.47 available to distribute to the Class.[2]  As of October 31,
20 2019, there have been 126 valid claims made. (KCC Decl. ¶ 12.) Based on the
21 valid claims to date, Class Counsel estimate the per-Class Member Settlement
22 Benefit to be approximately $1,397.41. (Eisenberg Decl. ¶ 21.)

23                **3.    Class Representative incentive award**

24         District courts in California have opined, in many cases, that a class
25 representative or incentive award of $5,000 is presumptively reasonable. *See*
26 *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266-67 (N.D. Cal. Mar. 20,

27
28 ───────────────
[2] KCC anticipates receiving more Valid Claim Forms with the supplemental
mailing. (Fellner Decl. ¶ 12.)

2015) (finding that "[i]n this district, a $5,000 payment is presumptively reasonable"). Plaintiff requests a $5,000 incentive award for the work it performed on Class's behalf and the substantial benefit it helped the Class receive. Plaintiff's Motion for Attorneys' Fees and Expenses, Costs, and an Incentive Award, filed separately, details Plaintiff's meaningful and active contribution to this litigation and the lack of any opposition to such an award.

### 4. Class Counsels' Application for Attorneys' Fees, Costs, and Expenses.

The Settlement Agreement expressly contained no "clear-sailing" provision as to Class Counsel's compensation. (Agreement § 13.5.) Class Counsel informed the Court and the Class in the motion for preliminary approval that counsel intended to apply for an award of attorneys' fees in the amount of to $77,500 (i.e., 25% of the $310,000 Settlement Fund), plus costs and expenses. (Doc. No. 33 at 17.) Class Counsel now request $77,500 in attorneys' fees and $8,282.79 in expenses and costs. Those amounts are explained in more detail in Plaintiff's Motion for Attorneys' Fees, Expenses and Incentive Award. Plaintiff asks the Court to approve the award of the requested sums to compensate Class Counsel for their time and efforts in litigating this contingency case on behalf of the Class, having obtained an excellent result for the Class.

### 5. Administrator's expenses for Notice and Administration

Defendant has agreed to pay all costs of notice and claims administration from the Settlement Fund. KCC has estimated the final cost of administration, including the supplemental mailed notice, to be $43,142.74. (KCC Decl. ¶ 13.)

## IV. ARGUMENT

### A. Final approval of the proposed settlement is warranted

"Unlike the settlement of most private civil actions, class actions may be settled only with the approval of the district court." *Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 623 (9th Cir.

1982). "The court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C). The Court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

"To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: 'the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.'" *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. The Court must balance against the continuing risks of litigation and the immediacy and certainty of a substantial recovery. *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 741 (S.D. N.Y. 1985).

The Ninth Circuit has long supported settlements reached by capable opponents in arms'-length negotiations. In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth Circuit expressed the opinion that courts should defer to the "private consensual decision of the [settling] parties." *Id.* at 965 (citing *Hanlon*, 150 F.3d at 1027 (9th Cir. 1998)). The district court must exercise "sound discretion" in approving a settlement. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Ellis v. Naval Air Rework Facility*,

87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1981). However, "where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation conducted by capable counsel, it is presumptively fair." *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F.Supp. 819, 822 (D. Mass. 1987); *In re Ferrero Litig.*, 2012 U.S. Dist. LEXIS 15174, *6 (S.D. Cal. Jan. 23, 2012) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.") (citing *Nat'l Rural Telcoms. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

The Court has already preliminarily found the requirements of Rule 23 of the Federal Rules of Civil Procedure are satisfied. (Doc. No. 35.) The relevant factors demonstrate that the proposed Settlement should be finally approved as fair, reasonable, and adequate.

### 1. **The strength of the Lawsuit and the risk, expense, complexity, and likely duration of further litigation**

This case is about Defendant's alleged practice of sending unsolicited faxes, without proper opt-out notices, to Class Members without their prior express consent. Plaintiff alleges that Defendant violated of TCPA. Defendant has raised seventeen affirmative defenses, including consent, a contention that the TCPA does not apply to faxes received through computer programs, failure to opt out of receiving fax transmissions, and lack of standing. (Doc. No. 20 ¶¶ 41-57.) With its initial motion to strike Plaintiff's class allegations (Doc. No. 13), Defendant quickly demonstrated its willingness to mount a vigorous defense.

Although Plaintiff feels strongly about the case's merits, there are risks to continuing the litigation. All litigation is risky but with the TCPA climate in constant flux—with issues of Article III standing falling both ways and courts differing when ruling on predominance issues—no one can predict the outcome of a case. If the case were to continue, Defendant would oppose any class certification motion, thereby placing in doubt whether a class could be certified.

Even if Plaintiff were to achieve certification, Defendant could seek an interlocutory appeal. Assuming the case were to move forward, Defendant would likely move for summary judgment. And if Plaintiff were to move for summary judgment, it would need to overcome each of Defendant's seventeen affirmative defenses. Then, Plaintiff would need to win at trial defend the judgment on appeal, and collect the judgment.

In considering the Settlement, Plaintiff and Class Counsel carefully balanced all of the risks of continuing to engage in protracted and contentious litigation against the benefits available to the Class by settling. As a result, Plaintiff and Class Counsel support the Settlement and seek its final approval. (Lehrman Decl. ¶ 60; Eisenberg Decl. ¶ 38.) *See Miller v. CEVA Logistics USA, Inc.*, No. 2:13-CV-01321-TLN, 2015 WL 4730176, at *5 (E.D. Cal. Aug. 10, 2015) ("With this settlement, the Settlement Class Members have an opportunity for an immediate, guaranteed payout instead of prolonged litigation which will run the risk of uncertain recovery."). What is more, an experienced mediator, intimately familiar with the instant litigation and TCPA litigation as a whole, agreed with the parties and helped them craft a fair compromise.

### 2.    The amount offered in the Settlement

As set forth above, Defendant has agreed to a common fund settlement of $310,000 and Plaintiff estimates that a per-Class Member Settlement Benefit of approximately $1,397.41. (Eisenberg Decl. ¶ 21.)

Although it is well-settled that a settlement may be acceptable even if it amounts to only a small percentage of the potential recovery that might be available to the class at trial,[3] the Settlement represents an unusually high per-

---

[3] *National Rural Tel. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (noting well-settled law that proposed settlement may be acceptable even though it amounts to only fraction of potential recovery); *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) (court-approved settlement amount that was just over 9% of maximum potential recovery).

person recovery for a TCPA case, given that the maximum statutory damages for a non-knowing or non-willful violation is only $500. Most TCPA settlements pay far less to each claiming class member:

| Case and No. | Class Size | Settlement Amount | Value per Class Member |
|---|---|---|---|
| *Robles v. Lucky Brand Dungarees, Inc.*, No. 3:10-cv-04846 (N.D. Ca.) | 216,000 | $9.9 Million | $100 maximum |
| *Adams v. AllianceOne, Inc.,* No. 08-cv-0248 (S.D. Ca.) | 5.63 Million | $9 Million | $40 maximum |
| *Hovila v. Tween Brands, Inc.*, No. 09-cv-00491-RSL (W.D. Wa.) | 100,000 | $5.33 Million Max | $20 Cash or $45 Gift Certificate |
| *Clark v. Payless Shoesource, Inc.*, No. 09-cv-00915-JCC (W.D. Wa.) | 8 Million | $6.25 Million | $25 Gift Certificate |
| *Bellows v. NCO Fin.*, No. 07-cv-1413-W (AJB) (S.D. Ca.) | Unknown, but in thousands | $950,000 | $70 |
| *Lemieux v. Global Credit & Collection*, No. 08-cv-1012-IEG(POR) (S.D. Ca.) | 27,844 | $505,000 | $70 |

A settlement whereby class members receive checks in excess of $1,000 is rare indeed. Moreover, this outstanding result was achieved without having to subject Class to the substantial risks ahead in litigation, including prevailing on class certification, surviving summary judgment premised on Defendant's arguments, such as that faxes received in the form of an email do not violate the TCPA, winning at trial, winning on appeal, and collecting a judgment. The amount offered here is exceptional.

### 3. **Class Members were provided with the best notice practicable, which afforded them an opportunity to choose whether to participate in the Settlement**

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to class members the "best notice practicable" under the

circumstances. Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received." *Silber v. Mabon*, 18 F. 3d 1449, 1454 (9th Cir. 1994). Final approval of the Settlement should be granted given considering the effective notice provided to the Class, i.e., direct mail, a website, and a toll-free telephone number. (KCC Decl. ¶¶ 5-9.) Notice reached 94% of the Class. (*Id.* ¶ 9.) This high percentage of actual notice achieved easily exceeds the 70% reach generally considered reasonable. *Federal Judicial Ctr., Judges' Class Action Notice & Claims Process Checklist & Plain Language Guide 3* (2010) (notice plan reaching at least 70% of class is reasonable). That the parties elected to extend the Claims Deadline and have KCC mail a second notice highlights that the Class was provided best notice practicable.

### 4.    The extent of discovery completed

The proposed Settlement is the result of intensive arms-length negotiations, which included several months of discovery into the nature of Defendant's practices and the size of the Class affected. Before the parties traveled to Philadelphia to engage in a full-day mediation session before an experienced mediator, they engaged in formal discovery, including interrogatories and requests for production of documents. They also informally shared information surrounding the claims and defenses. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239-40 (9th Cir. 1998) (formal discovery is not necessary ticket to bargaining table where parties have sufficient information to make informed decision about settlement). The parties participated in direct discussions about possible resolution of the litigation, including telephonic conferences, which laid the framework for a productive mediation.

Key information in TCPA cases includes identifying how many persons received the faxes and obtaining transmission records. This information was obtained from Defendant. Thus, the litigation here has reached the stage where "the parties certainly have a clear view of the strengths and weaknesses of their

cases." *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985). In addition, considering that key disputed issues between the parties are legal, as opposed to factual, in nature—whether the faxes contain proper opt-out notices, whether faxes received by email are encompassed by the TCPA, and whether the recipients of unsolicited faxes have Article III standing— the parties have exchanged sufficient information to make an informed decision about settlement. Thus, the litigation here has reached the stage where "the parties certainly have a clear view of the strengths and weaknesses of their cases." *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985). No more discovery is necessary for Plaintiff to form an assessment of the strengths and weaknesses of its case.

### 5.   The experience and views of Class Counsel

"The recommendations of plaintiff's counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). Such a presumption here is warranted because the settlement is the product of arm's-length negotiations conducted by capable, experienced counsel. *See M. Berenson Co.*, 671 F. Supp. at 822; *Ellis*, 87 F.R.D. at 18 ("that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); 2 Newberg on Class Actions § 11.24 (4th Ed. & Supp. 2002); Manual for Complex Lit., Fourth § 30.42.

It is the considered judgment of experienced counsel that this settlement is a fair, reasonable, and adequate settlement of the litigation. (Lehrman Decl. at ¶¶ 52, 60; Eisenberg Decl. at ¶ 38.) Class Counsel are experienced class action litigators, having filed more than 100 TCPA class actions. (Lehrman Decl. at ¶ 11-19, 50-52, 56; Eisenberg Decl. at ¶¶ 6-8, 11-13.) This Settlement was negotiated at arms' length by experienced and capable Class Counsel, who now recommend its approval. (Lehrman Decl. at ¶ 49; Eisenberg Decl. at ¶¶ 15, 38.) Moreover, the Settlement was reached after the assistance of a respected mediator. Given their

experience and expertise, Class Counsel are well-qualified not only to assess the prospects of a case, but also to negotiate a favorable resolution for the class. Class Counsel have achieved such a result here in this TCPA class action, and unequivocally assert that the proposed Settlement should receive final approval. Notably, this Settlement was reached with the assistance of experienced mediator, which shows a lack of collision between the parties. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (noting presence of neutral mediator as positive factor is assessing settlement).

### 6.    The positive reaction of Class Members to the Settlement

Not only were there no objections to the Settlement from the Class Members, no one even opted out. Such support speaks volumes about the outstanding settlement that was reached. *See Kmiec v. Powerwave Techs., Inc.*, No. SACV1200222CJCJPRX, 2016 WL 5938709, at *4 (C.D. Cal. July 11, 2016) (finding that small number of objections and requests for exclusion supported final approval; citing cases); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118 JSW, 2014 WL 1309352, at *7 (N.D. Cal. Mar. 31, 2014).

## V.    CONCLUSION

For all the foregoing reasons, Plaintiff Retina Associates, Inc., requests that the Court

A.    Grant final approval of the proposed settlement;

B.    Order payment from the settlement proceeds in compliance with the Court's Preliminary Approval Order and the Agreement;

C.    Grant the Motion for Attorney's Fees, Costs, and Incentive Payment;

D.    Enter the proposed Final Judgment and Order of Dismissal with Prejudice submitted herewith; and,

E.    Retain continuing jurisdiction over the implementation, interpretation administration and consummation of the Settlement.

14

Date: November 4, 2019                          EDWARDS POTTINGER LLC

                                                By: */s/ Seth M. Lehrman*
                                                    SETH M. LEHRMAN
                                                    *Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

Filed electronically on November 4, 2019, with:

United States District Court CM/ECF system

Notification was sent electronically on November 4, 2019, to:

Honorable Cormac J. Carney
United States District Court
Central District of California

Karen S. Hockstad
Joseph S. Levanthal
Vlardimir P. Belo

/s/ Seth M. Lehrman, Esq.

15