Seth M. Lehrman (178303)
seth@epllc.com
EDWARDS POTTINGER LLC
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone: 954-524-2820
Facsimile:  954-524-2822

Ronald J. Eisenberg (*Pro Hac Vice*)
reisenberg@sl-lawyers.com
SCHULTZ & ASSOCIATES LLP
640 Cepi Drive, Suite A
Chesterfield, MO 63005
Telephone: 636-537-4645
Facsimile: 636-537-2599

Attorneys for Plaintiff
Retina Associates Medical Group, Inc.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| **RETINA ASSOCIATES MEDICAL GROUP, INC., individually and on behalf of all others similarly situated,**<br><br>Plaintiff,<br><br>v.<br><br>**KEELER INSTRUMENTS, INC.,**<br><br>Defendant. | **Case No.: 8:18-cv-01358-CJC-DFM**<br><br>**<u>CLASS ACTION</u>**<br><br>**MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD**<br><br>Judge:     Hon. Cormac J. Carney<br>Date:       December 2, 2019<br>Time:       1:30 P.M.<br>Courtroom:   7C<br><br>[Filed and Served Concurrently with Declaration of Ronald J. Eisenberg; Declaration of Seth M. Lehrman; and Declaration of Joan Spencer Ruper] |

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7-3

Plaintiff's counsel certifies that prior to filing the instant motion, the parties, through counsel, conferred pertaining to the subject matter of the instant motion. Defendant does not oppose this motion.

Date: November 4, 2019

**EDWARDS POTTINGER LLC**

By: */s/ Seth M. Lehrman*
   SETH M. LEHRMAN
   Attorney for Plaintiff

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................1

II. STATEMENT OF FACTS ......................................................3

   A. FACTUAL BACKGROUND ...........................................3

      1.   Litigation .........................................................3

      2.   Mediation .........................................................4

III. ARGUMENT .......................................................................4

   A. The Requested Fee Award Is Fair, Reasonable and Justified ........4

      1.   The Settlement resulted from arm's-length negotiations with no collusion ..................................................5

      2.   The requested fees are reasonable, fair, and justified under the percentage-of-the-fund method ........................7

         a. Class Counsel have obtained excellent results for the Class in comparison to awards made in similar cases ...............7

         b. The risks of litigation support the requested fees ...............10

         c. The skill required and quality of work performed support the requested fees ....................................................11

         d. Class Counsel's undertaking of this Action on a contingency-fee basis supports the requested fees .........12

      3. The requested fee is reasonable, fair, and justified under the lodestar method .................................................13

         a. Class Counsel's lodestar is reasonable ...................14

         b. Class Counsel's hourly rates are reasonable ..................15

   B. The Requested Costs Are Fair And Reasonable ............................16

IV. CLASS REPRESENTATIVE'S APPLICATION FOR INCENTIVE AWARD ..........................................................17

V. CONCLUSION ....................................................................18

# TABLE OF CONTENTS

**Cases**

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245

   (N.D. Cal. Mar. 20, 2015) ................................................................17

*Blum v. Stevenson*, 465 U.S. 886 (1994) ................................................15

*Davis v. City and County of San Francisco*, 976 F.3d 1536 (9th Cir. 1992) ..........15

*Dennis v. Kellogg Co.*, 2010 WL 4285011 (S.D. Cal. Oct. 14, 2010) ....................6

*Fischel v. Equit. Life Assurance Soc'y*, 307 F.3d 997 (9th Cir. 2002) ..................14

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................2, 13

*Hartless v. Clorox Co.*, 273 F.R.D. 630 (S.D. Cal. 2011) ...................................15

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ...............................................7

*Hogue v. YRC, Inc.*, No. EDCV 16-01338-CJC(JEMx)

   (C.D. Ca. June 24, 2019) ................................................................17

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) .............5

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...........16

*In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362 (N.D. Cal. 1996) ...........16

*In re Mercury Interactive Corp.*, 618 F.3d 988 (9th Cir. 2010) ...........................5

*In re Omnivision Techs.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................. *passim*

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934

   (9th Cir. 2015) ................................................................17

*In re Toys R Us – Delaware, Inc. – Fair and Accurate Credit Transactions Act*

   *(FACTA) Litigation*,  295 F.R.D. 438 (C.D. Cal. Jan. 17, 2014) ......................17

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291

   (9th  Cir. 1994) ................................................................12

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) ...........................14

*Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762 (D.N.J.  Sept. 14, 2009) ..........6

*POM Wonderful, LLC v. Purely Juice, Inc.*, 2008 WL 4351842 (C.D. Cal 2008) .15

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*, 2010 WL 2486346
    (C.D. Cal. June 15, 2010) .......................................................................6
*Serrano v. Unruh*, 32 Cal. 3d 621 (1982) ...............................................15
*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ..............................4, 5
*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002).......................... *passim*
*Wright v. Randstad US, LP*, No. SACV 8:13-cv-00815-CJC-AGR
    (C.D. Ca. Sept. 15, 2016) .....................................................................17

**Statutes**

47 U.S.C. § 227 ......................................................................................3, 6

**Other Authorities**

2 McLaughlin on Class Actions (8th ed.) ...................................................6
Federal Judicial Center, Manual for Complex Litigation (4th Ed. 2004) .................7

**Rules**

Fed. R. Civ. P. 23 .................................................................................2, 4, 8

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Retina Associates, Inc., moves for an award of attorneys' fees, expenses and costs, and an incentive award as part of this preliminarily approved class action settlement (Dkt. No. 36) between Plaintiff and Defendant Keeler Instruments, Inc.

Under the Settlement Agreement ("Agreement" or "Settlement"), Defendant agreed to establish a non-reversionary $310,000 Settlement Fund to fund (1) Settlement Administration Costs; (2) attorneys' fees, costs, and expenses to Class Counsel, as approved by the Court; (3) an incentive award, if any, to Plaintiff; (4) Class recovery on a pro rata basis up to $1,500 each to Class Members who submit a Valid Claim Form; and (5) any *cy pres* distribution.  (Agreement (Dkt. No. 33-1) § 10.35.)  Although claims will continue to arrive until the Claims Deadline, which was extended until December 10, 2019, to provide the 3,937 Class Members additional time to submit claims, based on the number of valid claims received thus far, each Class Member who submits a valid claim is estimated to receive $1,397.41.

In the preliminary approval motion, Plaintiff indicated that Class Counsel would request a Class Representative Award of $5,000 for Plaintiff and that Class Counsel intended to apply for an award of attorneys' fees in the amount of to $77,500 (i.e., 25% of the $310,000 Settlement Fund), plus costs and expenses. (Dkt. No. 33 at 16-17.)  On July 7, 2019, the Court granted preliminary approval of the Settlement, observing that the Settlement "appears fair, reasonable, and adequate, and that the proposed plan of notice is the best notice practicable under the circumstances and consistent with Due Process and Federal Rule of Civil Procedure 23." (Dkt. No. 36 at 2.) The Court noted that at the Final Approval Hearing it would to consider an application for an award of attorneys' fees, costs,

and expenses of Class Counsel, as well as the application for a Class Representative Award. (*Id.* at 7.)

Federal Rules of Civil Procedure provide that "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23. As noted by Plaintiff's Motion for Preliminary Approval of Class Settlement and Certification of Settlement Class, which was approved by this Court, the Settlement resulted from extensive arm's-length negotiations, including a full-day mediation session in Philadelphia. (Dkt. No. 33 at 11-12.) The arm's-length negotiations serve as "independent confirmation" of the reasonableness of the Settlement's terms including the attorneys' fees, costs, and incentive award now sought. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Under these circumstances, the Court may give deference to the judgment of the parties regarding the reasonableness of the requested fees.

The reasonableness of the requested fees is also supported by the "percentage of-the-fund" and "lodestar" approach. The $77,500 in attorneys' fees sought equates to 25% of the $310,000 Settlement Fund, which falls squarely in line with the Ninth Circuit's benchmark percentage of 25% for attorneys' fee awards in common-fund cases, such as the present. Additionally, as of October 31, 2019, Class Counsel incurred a combined total of 236.1 hours litigating this action for a combined lodestar of $126,540. Through this fee brief, which is unopposed by Defendant, Plaintiff seeks Court approval of the agreed-upon costs and fees as follows: (1) all settlement administration costs, estimated by the Settlement Administrator to be $43,142.74, to be paid to the Settlement Administrator; (2) attorneys' fees in the amount of $77,500; and (3) litigation costs in an amount of $8,282.79. As more thoroughly stated herein and as detailed in the supporting declarations filed herewith, these sums are fair and reasonable as they resulted

from extensive arm's-length negotiations and are further supported by the percentage-of-the-fund and loadstar methodologies.

## II.   STATEMENT OF FACTS

### A.   FACTUAL BACKGROUND

Defendant is a manufacturer of ophthalmic instruments and also sells ophthalmic medication. (*See* Lehrman Decl. ¶ 27, attached hereto as Exhibit "A".) It maintains a website with products advertised. (*Id.* ¶ 27.) During the Class Period, Defendant sent fax advertisements in connection with its marketing campaigns. (*Id.* ¶ 28.) Plaintiff contends that these were unsolicited fax advertisements. (*Id.* ¶ 29.)  Plaintiff alleged that Defendant violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), by sending to Plaintiff's and the Class's telephone facsimile machines unsolicited advertisements that lacked proper opt-out notices. (*Id.* ¶ 29.)  (Dkt. No. 17 ¶¶ 12, 15, 20.) Plaintiff contends that it and the Class are entitled to statutory damages under the TCPA. Defendant has vigorously denied that it violated the TCPA, and pleaded seventeen affirmative defenses. (*Id.* ¶ 30.) (Dkt. No. 20 ¶¶ 25, 41-57.)

### 1.   Litigation.

On August 3, 2018, after receiving a fax advertising eye drops, Plaintiff filed a Class Action Junk-Fax Complaint, alleging both non-willful and willful violations of the TCPA based on unsolicited facsimile advertisements. (Docs. 1 & 1-1.) Plaintiff seeks $500 per non-willful violation and $1,500 for each knowing or willful violation, as well as injunctive relief. (Dkt. No. 1 at 10.) Its claim was brought on behalf of a class who also allegedly received unsolicited fax advertisements from Defendant. (Dkt. No. 1.) The parties stipulated to extend the time for Defendant to respond to the complaint for Plaintiff to move for class certification. (Dkt. No. 10.) Defendant then moved to strike Plaintiff's class allegations. (Dkt. No. 13, 13-1.) Before that motion was adjudicated, Plaintiff amended its complaint. (Dkt. No. 17.) Defendant answered the amended complaint

and pleaded seventeen affirmative defenses. (Dkt. No. 20.) The parties submitted a joint proposed scheduling plan. (Dkt. No. 21.) They also made their initial disclosures. On December 13, 2018, Plaintiff served a Rule 30(b)(6) deposition notice on Defendant. The parties served each other with written discovery requests and produced responsive documents. On February 13, 2019, Plaintiff's counsel sent Defendant's counsel a written request for a pre-filing conference concerning Defendant's document production. Thereafter the parties conferred and Defendant supplemented its production to address issues Plaintiff raised. On February 22, 2019, the Court entered a Scheduling Order and referred the case to private mediation. (Dkt. No. 22 ¶ 5.) The parties stipulated to a protective order governing discovery, which the Court granted. (Dkt. Nos. 24, 30.)

### 2.   Mediation.

The parties engaged in all-day mediation with an experienced mediator, Bennett G. Picker, on April 23, 2019, in Philadelphia, where Defendant is located. (Lehrman Decl. ¶ 25.) Mediation was a success, but the parties engaged in continued negotiations over the Settlement's terms. (*Id.* ¶ 26.)

## III.   <u>ARGUMENT</u>

Class Counsel respectfully assert that (a) the requested fee award of $77,500 is fair, reasonable, and justified, and (b) payment of $8,282.79 in costs is fair and reasonable.   (Lehrman Decl. ¶ 60; *See* Eisenberg Decl. ¶ 21, attached hereto as Exhibit "B").

### A.   <u>The Requested Fee Award Is Fair, Reasonable and Justified</u>

The Federal Rules of Civil Procedure provide that "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties agreement." Fed. R. Civ. P. 23(h).   As explained by the Ninth Circuit, "[a]ttorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is 'fundamentally fair,

adequate, and reasonable.'" *Staton v. Boeing Co*., 327 F.3d 938, 963 (9th Cir. 2003). In common fund cases, Courts within the Ninth Circuit have discretion to use one of two methods to determine whether the fee request is reasonable: (1) percentage-of-the-fund; or (2) lodestar plus a risk multiplier. *Staton*, 327 F.3d at 967-68; *see also In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010). "Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result." *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 942 (9th Cir. 2011).

Class Counsel submit that the requested fees are fully supported under the percentage-of-the-fund and lodestar approach, which Class Counsel offer as an additional and optional means of cross-checking the requested fees, even though the requested percentage equates to far less than the lodestar approach, even without a lodestar multiplier.

### 1. The Settlement resulted from arm's-length negotiations with no collusion

In *Bluetooth*, the Ninth Circuit noted that when a settlement agreement is negotiated prior to formal class certification, courts must ensure that the settlement did not result from collusion among the parties. *Id*. at 947. The appellate the court identified three such signs:

(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;

(2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and

1      (3) when the parties arrange for fees not awarded to revert to

2      defendants rather than be added to the class fund.

3  *Id.* (internal quotation marks and citations omitted).

4      None of those three signs is present here. First, Class Members who submit

5  valid claims are likely to receive well more than $1,000 each, double the statutory

6  damages for a non-willful and non-knowing violation of the TCPA. *See* 47 U.S.C.

7  § 227(b)(3)(B). Second, the Settlement has no clear-sailing arrangement and did

8  not prevent Defendant from objecting this motion.  Third, no part of the $310,000

9  Settlement Fund will revert to Defendant. Even the money from any uncashed

10  checks to Class Members will be divided between two *cy pres* recipients who

11  provide medical services to those in need.  (Dkt. No. 33-1 at 5 § 10.35.2.)

12      In addition, as noted in Section III.A.2, *supra*, the Settlement resulted from

13  day-long mediation. *See Milliron v. T-Mobile USA, Inc*., 2009 WL 3345762, at *5

14  (D.N.J. Sept. 14, 2009) ("[T]he participation of an independent mediator in

15  settlement negotiation virtually insures that the negotiations were conducted at

16  arm's length and without collusion between the parties."); *Sandoval v. Tharaldson*

17  *Emp. Mgmt., Inc*., 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("[T]he

18  assistance of an experienced mediator in the settlement process confirms that the

19  settlement is non-collusive."); *Dennis v. Kellogg Co*., 2010 WL 4285011, at *4

20  (S.D. Cal. Oct. 14, 2010) ("full-day mediation session" helped to establish that the

21  proposed settlement was noncollusive); *see also* 2 McLaughlin on Class Actions, §

22  6:7 (8th ed.) ("A settlement reached after a supervised mediation receives a

23  presumption of reasonableness and the absence of collusion").

24      The parties had also conducted extensive informal and formal discovery

25  surrounding Plaintiff's claims and Defendant's defenses, further buttressing the

26  reasonableness of the settlement process.  The requested fees are wholly supported

27  by the both the percentage-of-the-fund and lodestar methods, which the Court may

28  employ as a means of assessing the reasonableness of the requested fee.

### 2.   The requested fees are reasonable, fair, and justified  under the percentage-of-the-fund method

Courts consider a number of factors to determine the appropriate percentage of the fund to awarding as attorneys' fees in a common fund case including: (a) the results achieved; (b) the risk of litigation; (c) the skill required and the quality of work; (d) the contingent nature of the fee; and, (e) awards made in similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047, 1048-50 (9th Cir. 2002).  The "benchmark" percentage for attorney's fees in the Ninth Circuit is 25% of the common fund with costs and expenses awarded in addition to this amount.  *Id.* at 1047. "However, in most common fund cases, the award exceeds that [25%] benchmark." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007) (citing *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1998)). Both the *Omnivision* and *Activision* Courts concluded that "Absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%." *Omnivision*, 559 F. Supp. 2d at 1048.

Class Counsel's request for attorneys' fees in the amount of $77,500 equates to 25% of the $310,000 Settlement Fund, which falls squarely within the Ninth Circuit's benchmark and is considerably less than more recent precedent. In most cases, the benchmark 25% in attorneys' fees are most often paid from the fund, thereby reducing class members' recovery, as is this case.  In addition, the fee request is fully supported by the factors enunciated in *Vizcaino* including: (a) the results achieved; (b) the risk of litigation; (c) the skill required and the quality of work; (d) the contingent nature of the fee; and, (e) awards made in similar cases.

### a.   Class Counsel have obtained excellent results for the Class in comparison to awards made in similar cases

The results obtained for the class are generally considered to be the most important factor in determining the appropriate fee award in a common fund case. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983); *Omnivision*, 559 F. Supp. 2d at 1046; *see also* Federal Judicial Center, Manual for Complex Litigation, § 27.71,

p. 336 (4th Ed. 2004) ("fundamental focus is on the result actually achieved for class members") (citing Fed. R. Civ. P. 23(h) committee note).  Standing alone, this factor supports Class Counsel's fee request.

The settlement secured by Plaintiff and Class Counsel provides an excellent recovery for Class Members as compared to similar TCPA cases, despite the uncertainty of recovery in TCPA class actions. The Settlement provides for $310,000 in recovery for the Class. As noted in Section III.D.2 of Plaintiff's Motion for Final Approval of Class-Action Settlement, filed contemporaneously herewith, Class Counsel estimate the per-Class Member Settlement Benefit to be approximately $1,397.41.

The settlement amount to class members is greater than numerous similar TCPA class action settlements which have been approved by courts within the Ninth Circuit and California in particular.  Below is a chart of eleven TCPA class action settlements that have received approval, including the value to each proposed class member for the respective case.

| Case and No. | Size of Class | Settlement Amount | Value per Class Member |
|---|---|---|---|
| *Robles v. Lucky Brand Dungarees, Inc.*, No. 3:10-cv-04846 (NDCA) | 216,000 | $9.9 Million | $100 maximum |
| *Adams v. AllianceOne, Inc.*, No. 08-cv-0248 (SDCA) | 5.63 Million | $9 Million | $40 maximum |
| *Hartman v. Comcast Business Comm'ns*, 2:10-cv-00413-RSL (WDWA) | 148,843 | $3.8 Million | $25.53 maximum |
| *Hovila v. Tween Brands, Inc.*, No. 09-cv-00491-RSL (WDWA) | 100,000 | $5.33 Million Max | $20 Cash; or $45 Gift Certificate |

| Case and No. | Size of Class | Settlement Amount | Value per Class Member |
|---|---|---|---|
| *Clark v. Payless Shoesource, Inc.*, No. 09-cv-00915-JCC (WDWA) | 8 Million | $6.25 Million | $25 Gift Certificate |
| *Cubbage v. The Talbots, Inc.*, 09-cv-00911-BHS (WDWA) | 18,000 | $1.44 Million | $80 Gift Certificate ($40 Cash Value) |
| *In Re Jiffy Lube*, No. 3:11-md-02261 | 2.3 Million | $47 Million | $17.29 Gift Certificate ($12.97 Cash Redemption) |
| *Bellows v. NCO Fin*, No. 07-cv-1413-W(AJB) (SDCA) | Unknown, but in the thousands | $950,000 | $70 |
| *Lemieux v. Global Credit & Collection*, 08-cv-1012-IEG(POR) (SDCA) | 27,844 | $505,000 | $70 |
| *Gutierrez v. Barclays Grp.*, 10-cv-1012 (SDCA) | 66,100 | | $100 |
| *Arthur v. Sallie Mae, Inc.*, No. 10-cv-0198, (WDWA) | | $24.15 Million | Between $20 and $40 |

The case at bar was resolved for a sum that represents a far greater payout per valid claim than any of the cases noted above.  This fact strongly supports the fees requested by Plaintiff.

### b.    The risks of litigation support the requested fees

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." *Omnivision*, 559 F. Supp. 2d at 1046-47; *see also Vizcaino*, 290 F.3d at 1048 (risk of dismissal or loss on class certification is relevant to evaluation of requested fee). Defendant has raised seventeen affirmative defenses, including consent, a contention that the TCPA does not apply to faxes received through computer programs, failure to opt out of receiving fax transmissions, and lack of standing. (Dkt. No. 20 ¶¶ 41-57.) With its initial motion to strike Plaintiff's class allegations (Dkt. No. 13), Defendant quickly demonstrated its willingness to mount a vigorous defense.

Although Plaintiff feels strongly about the case's merits, there are risks to continuing the litigation. If the case were to continue, Defendant would oppose any class certification motion, thereby placing in doubt whether a class could be certified. Even if Plaintiff were to achieve certification, Defendant could seek an interlocutory appeal. Assuming the case were to move forward, Defendant would likely move for summary judgment. And if Plaintiff were to move for summary judgment, it would need to overcome each of Defendant's seventeen affirmative defenses. Then, Plaintiff would need to win at trial defend the judgment on appeal, and collect the judgment. In considering the Settlement, Plaintiff and Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation against the benefits to the Class including the significant benefit and the deterrent effects it would have.

The Settlement is a compromise avoiding the risk that the Class might not recover, and presents a fair and reasonable alternative to continuing to pursue the Action as a class action for alleged violations of the TCPA. Furthermore, an experienced mediator agreed with the parties. This Court also agreed with the parties' reasoning by preliminarily approving the Settlement. Thus, the risks of

continued litigation not only support the Settlement, the great result obtained for the Class also supports the reasonableness of the requested fees.

### c. The skill required and quality of work performed support the requested fees

The "prosecution and management of a complex [] class action requires unique legal skills and abilities" that are to be considered when evaluating fees. *Omnivision*, 559 F. Supp. 2d at 1047. Class Counsel are experienced TCPA class-action litigators, having litigated more than 120 TCPA class actions nationwide and having been appointed class counsel in many of those cases. (Lehrman Decl. ¶¶ 14, 16; Eisenberg Decl. ¶¶ 7, 23.) They have also successfully defended and prosecuted other types of class actions and have secured noteworthy recoveries for those classes. (Lehrman Decl. ¶¶ 12-15, 17; Eisenberg Decl. ¶¶ 6-8, 23.) Class Counsel's proven track record and strong reputations demonstrate not only the quality of work performed, but also the skill required to successfully prosecute large complex class actions. (Lehrman Decl. ¶¶ 11, 18; Eisenberg Decl. ¶¶ 9-10.)

In the present case, Class Counsel  (a) conducted an extensive investigation into the underlying facts prior to bringing the action; (b) evaluated available causes of action, including not only the TCPA but others; (c) thoroughly researched class members' claims and available defenses; (d) prepared a detailed and lengthy class-action complaint; (f) engaged in numerous rounds of settlement negotiations; (g) travelled to Philadelphia to mediate the case; (h) prepared the motion for preliminary approval of the settlement and the attachments; (i) drafted the settlement agreement; (j) evaluated potential settlement administrators; (k) oversaw the notice and claims administration process; (l) prepared this motion and the supporting declarations; (m) regularly communicated with Plaintiff by telephone and email; and (n) and prepared the motion for final approval of this class action settlement.  (Lehrman Decl. ¶ 42; Eisenberg Decl. ¶ 28.)

Thus, Class Counsel's skill, diligence, and expertise played significant roles in the parties' reaching a settlement, and therefore support the requested fees.

### d. Class Counsel's undertaking of this case on a contingency-fee basis supports the requested fees

The Ninth Circuit has long recognized that the public interest is served by rewarding attorneys who undertake representation on a contingent basis by compensating them for the risk that they might never be paid for their work. *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for Plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose"); *Vizcaino*, 290 F.3d at 1051 (courts reward successful class counsel in contingency cases "for taking risk of nonpayment by paying them a premium over their normal hourly rates").

Class Counsel prosecuted this matter on a purely contingent basis while agreeing to advance all necessary expenses knowing that Class Counsel would only receive a fee if there were a recovery. (Lehrman Decl. ¶ 45; Eisenberg Decl. ¶ 33.)  In pursuit of this litigation, Class Counsel have spent considerable outlays of time and money by, among other things, (1) investigating the actions; (2) conducting discovery on Defendant; (3) responding to discovery; (4) traveling to Philadelphia for costly mediation, which resulted in the Settlement; (5) overseeing administration of the Settlement; and (6) respond to Class Member inquiries.  Class Counsel expended these resources despite the risk that Class Counsel may never be compensated, especially in light of the fluctuating interpretations of the TCPA and the difficulty in securing class certification.

As of October 31, 2019, Class Counsel here incurred $8,282.79 in costs to date and have spent 236.1 hours litigating this action.  (Lehrman Decl. ¶¶ 41-42 and Ex. B; Eisenberg Decl. ¶¶ 30-31 and Ex. A.)  Thus, Class Counsel's

"substantial outlay, when there is a risk that none of it will be recovered, further supports the award of the requested fees" in this matter. *Omnivision*, 559 F. Supp. 2d at 1047. As articulated above, the percentage-of-the-fund method is the preferred and most widely used method for determining attorneys' fees in a common fund case. The requested fees are fully supported by the factors enunciated by *Vizcaino* and are commensurate with the excellent result obtained for the Class, which is comparable or in excess of settlements in other TCPA cases, as discussed *supra*.

While the requested fees are fully supported by the percentage-of-the-fund method, the application of that method is optional and may be applied at the Court's discretion. In addition, the Court may apply the lodestar method an optional means of cross- checking the requested fees.

### 3.     The requested fee is reasonable, fair, and justified under the lodestar method

A court applying the percentage-of-the-fund method may use the lodestar method as a "cross-check on the reasonableness of a percentage figure." *Vizcaino*, 290 F.3d at 1050. If the Court chooses to perform such a cross-check, it will confirm that a fee award of 25% of $310,000, i.e., $77,500, is reasonable.

The first step in the lodestar-multiplier approach is to multiply the number of hours counsel reasonably expended by a reasonable hourly rate. *Hanlon*, 150 F.3d at 1029. Once this raw lodestar figure is determined, the Court may then adjust that figure based upon its consideration of many of the same "enhancement" factors considered in the percentage-of-the-fund analysis, such as: (1) the results obtained; (2) whether fee is fixed or contingent; (3) the complexity of the issues involved; (4) the preclusion of the other employment due to acceptance of the case; and, (5)

the experience, reputation, and ability of the attorneys. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).[1]

### a.   Class Counsel's lodestar is reasonable

The accompanying declarations of Class Counsel show the hours of work and billing rates used to calculate their lodestar. A summary follows:

| NAME | HRS. INCURRED | RATE | TOTAL |
|------|---------------|------|-------|
| SETH M. LEHRMAN | 103.5 | $550 | $56,925 |
| RONALD J. EISENBERG | 132.6 | $525 | $69,615 |
| **TOTAL COMBINED LODESTAR** | 236.1 | | $126,540 |

(Lehrman Decl. ¶ 41; Eisenberg Decl. ¶ 30.) Class Counsel have devoted a total of 236.1 hours to this litigation as of October 31, 2019, and have a total lodestar to date of $126,540, which represents a negative multiplier. These amounts do not yet include an estimate of the additional time that Class Counsel will spend going forward in seeking final approval of, and implementing the Settlement, including assisting Class Members with claims and overseeing claims administration.

Thus, Class Counsel's lodestar is reasonable. Class Counsel prosecuted the claims at issue efficiently and effectively, making every effort to prevent the duplication of work that might have resulted from having two firms working on this case. In this regard, tasks were reasonably divided among firms to ensure avoiding the replication of work.[2] In addition, Class Counsel's contemporaneous time records were carefully reviewed.

---

[1] The risk inherent in contingency representation is a critical factor. The Ninth Circuit stresses that "[i]t is an abuse of discretion to fail to apply a risk multiplier when . . . there is evidence that the case was risky." *Fischel v. Equit. Life Assurance Soc'y*, 307 F.3d 997, 1008 (9th Cir. 2002).

[2] Hours for paralegals and support staff are recoverable, but were zeroed for

### b.    Class Counsel's hourly rates are reasonable

Similarly, Class Counsel's hourly rates are also reasonable.  In assessing the reasonableness of an attorney's hourly rate, courts consider whether the claimed rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stevenson*, 465 U.S. 886, 895 n.11 (1994). *See also Davis v. City and County of San Francisco*, 976 F.3d 1536, 1546 (9th Cir. 1992); *Serrano v. Unruh*, 32 Cal. 3d 621, 643 (1982). As demonstrated in their declarations, Class Counsel are each experienced, highly regarded bar members with extensive expertise in the area of class actions and complex litigation like the one here.

According to the well-respected Laffey Matrix, reasonable hourly rates for a partner of a law firm practicing 8-10 years is $661, 11-19 years is $747, and 20+ years is $899.  http://www.laffeymatrix.com/see.html (last visited Oct. 31, 2019).

Mr. Lehrman, who began practicing law in California in 1995, has dedicated his career to complex civil litigation matters and consumer protection litigation, including class action litigation under the TCPA and other class actions, in state and federal courts in Florida, California, and across the United States. Mr. Lehrman has represented individuals and businesses in class action and whistleblower cases to holding corporate wrongdoers accountable.  He was class counsel and trial counsel in a class action against an entity that does business as Trump National Golf Club–Jupiter, *Hirsch v. Jupiter Golf Club*, LLC, 2017 WL 448952 (S.D.Fla. Feb. 1, 2017).  In *Hirsch*, he and his firm deposed Donald Trump and Eric Trump and won a multi-million-dollar trial verdict. (Lehrman Decl. ¶ 12.) Thus, the billing rate for Mr. Lehrman of only $550 per hour is well within the normal range of fees charged by firms for partner work.[3]

---

purposes of this motion.

[3] See *Hartless v. Clorox Co.*, 273 F.R.D. 630, 643-44 (S.D. Cal. 2011), aff'd in part, 473 F. Appx. 716 (9th Cir. 2012) (approving hourly rates of $675-795 for partners, up to $410 for associates, and up to $345 for paralegals); *see also POM*

Additionally, Ronald J. Eisenberg, who has contributed substantially to this litigation, has litigated more than 120 TCPA class actions in federal and state courts and has been appointed lead counsel numerous times, including earlier this year in a large TCPA case. (Eisenberg Decl. ¶ 7.) *See BPP v. Brasseler U.S.A. Dental*, No. 1611-CC00730-01 (St. Charles County Cir. Ct. Jan. 11, 2019) (appointed lead counsel and achieved $4.9 million settlement nationwide TCPA junk-fax class action). Thus, the billing rate for $525 per hour for Mr. Eisenberg, an attorney with 20 years of experience, is justified.

Hence, Class Counsel's combined lodestar of $126,540, which far exceeds the $77,500 requested, is reasonable and supports the requested attorneys' fees.

## B.     The Requested Costs Are Fair and Reasonable

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-392 (1970)). The litigation expenses Class Counsel incurred in this case were necessary to secure the resolution of this litigation. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (finding that costs such as filing fees, photocopy costs, travel expenses, postage, telephone and fax costs, computerized legal research fees, and mediation expenses are relevant and necessary expenses in class action litigation). Based upon the discussion herein, Class Counsel believe that the costs incurred in this matter are fair and reasonable.

Throughout the course of this litigation, Class Counsel had to incur costs totaling $8,282.79. (Lehrman Decl. ¶¶ 48, 43 ($7,775.46); Eisenberg Decl. ¶ 31 ($507.33).)  These costs were necessary to secure the resolution of this litigation

*Wonderful, LLC v. Purely Juice, Inc.*, 2008 WL 4351842 at *4 (C.D. Cal 2008) (finding partner rates of $750 to $475 reasonable).

and Class Counsel put forward said costs without assurance that Class Counsel would ever be repaid.  In light of the expenses Class Counsel were required to incur to bring this case to its current settlement posture, their request for costs is reasonable.  And Class Counsel will incur additional costs connected with the final approval hearing.

## IV. CLASS REPRESENTATIVE'S APPLICATION FOR INCENTIVE AWARD

Plaintiff requests a $5,000 Class Representative or "Incentive" Award for the work it performed on Class's behalf and the substantial benefit Plaintiff helped the Class receive. District courts in California have opined, in many cases, that a class representative or incentive award of $5,000 is presumptively reasonable. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266-67 (N.D. Cal. Mar. 20, 2015) (finding that "[i]n this district, a $5,000 payment is presumptively reasonable"); *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942-43 (9th Cir. 2015); *In re Toys R Us – Delaware, Inc. – Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 472 (C.D. Cal. Jan. 17, 2014). Some cases have resulted in Class Representative Awards in excess of $5,000. *See Hogue v. YRC, Inc.*, No. EDCV 16-01338-CJC(JEMx) (C.D. Ca. June 24, 2019) (awarding $10,000); *Wright v. Randstad US, LP*, No. SACV 8:13-cv-00815-CJC-AGR (C.D. Ca. Sept. 15, 2016) (awarding lead plaintiffs $10,000 and $5,000).

Plaintiff's meaningful and active contribution to this litigation and the lack of any opposition to such an award demonstrate its reasonableness.  (*See* Spencer Ruper Decl. ¶¶ 3-7, attached hereto as Exhibit "C".)

Plaintiff likely could have settled its claims individually for more than $5,000.  (*Id.* ¶ 6.)  Had it done so, the Class Members would have received nothing, unless someone else came forward to bring the case and was successful and achieving a settlement or judgment. Plaintiff also assisted in the litigation by providing documents and information to counsel, participating in the motions and

settlement discussions, and reviewing and approving the settlement on behalf of the Class. Plaintiff acted dutifully in his role as a class representative, and should be awarded this reasonable sum of $5,000 for his part in the litigation.

## IV.     CONCLUSION

Class Counsel respectfully request that the Court grant this motion and award them award of attorneys' fees of $77,500 (25% of the Settlement Fund), litigation costs of $8,282.49, and award Plaintiff a Class Representative Incentive Award of $5,000.

Date: November 4, 2019                      EDWARDS POTTINGER LLC

                                            By: */s/ Seth M. Lehrman*
                                                 SETH M. LEHRMAN
                                                 *Attorney for Plaintiff*


## CERTIFICATE OF SERVICE

Filed electronically on November 4, 2019, with:

United States District Court CM/ECF system

Notification was sent electronically on November 4, 2019, to:

Honorable Cormac J. Carney
United States District Court
Central District of California

Karen S. Hockstad
Joseph S. Levanthal
Vlardimir P. Belo

/s/ Seth M. Lehrman, Esq.