JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

|  |  |
|---|---|
| RETINA ASSOCIATES MEDICAL GROUP, INC., on behalf of itself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> KEELER INSTRUMENTS, INC., <br><br> Defendant. | Case No.: SACV 18-01358-CJC (DFMx) <br><br><br> **ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT [Dkt. 39] AND MOTION FOR ATTORNEY FEES AND COSTS, CLASS REPRESENTATIVE INCENTIVE AWARD, AND SETTLEMENT ADMINISTRATOR COSTS [Dkt. 40]** |

## I. INTRODUCTION

Plaintiff Retina Associates Medical Group, Inc. ("Plaintiff" or "Retina Associates") brings this class action against Defendant Keeler Instruments, Inc. ("Defendant" or "Keeler") for violations of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*. ("TCPA"). (Dkt. 17 [Operative First Amended Complaint, hereinafter "FAC"].) After mediation, the parties reached a settlement, which the Court

preliminarily approved.  (Dkts. 35, 36.)  Plaintiff now asks the court to grant final approval of the settlement and the requested attorney fees, litigation costs, plaintiff incentive award, and settlement administration costs.  (Dkt. 39 [hereinafter "Mot."]; Dkt. 40 [hereinafter "Fee Mot."].).)[1]  For the following reasons, Plaintiffs' motions are **GRANTED**.

## II. BACKGROUND

Keeler manufactures ophthalmic instruments and sells ophthalmic medication. (Dkt. 39-1 [Declaration of Seth Lehrman, hereinafter "Lehrman Decl."] ¶ 27.)  According to Plaintiff, Keeler sent unsolicited advertisements to telephone facsimile machines without proper opt-out notices in violation of the TCPA.  (*See generally* FAC.)  On behalf of itself and the other recipients of these unsolicited advertisements, Plaintiff seeks statutory damages under the TCPA.  (Lehrman Decl. ¶¶ 29–30.)  Keeler denies that it violated the TCPA and pleaded seventeen affirmative defenses.  (*Id.* ¶ 27.)

On April 23, 2019, the parties attended a full-day mediation in Philadelphia before an experienced mediator, Bennett G. Picker.  (*Id.* ¶ 25.)  Following the mediation and several continued negotiations, they entered into a settlement agreement (the "Settlement Agreement").  (*Id.*; Dkt. 33-1 Ex. A [Settlement Agreement, hereinafter "SA"].)  The Settlement Agreement creates a Settlement Fund of $310,000 to benefit all persons or entities who were sent an unsolicited fax message advertising Keeler's goods or services on or after August 3, 2014.  (SA § 10.35.)  The Settlement Fund, less settlement administration costs, attorney fees and expenses, and an incentive award for Plaintiff, will be distributed on a pro rata basis of up to $1,500 per class member who submits a valid claim.  (*Id.*)

---

[1] Also before the Court is Plaintiff's supplemental briefing addressing the settlement administration costs.  (Dkt. 45.)

The Court granted preliminary approval of the Settlement Agreement on July 22, 2019, and appointed Kurtzman Carson Consultants, LLC ("KCC") as settlement administrator.  (Dkt. 36.)  Keeler provided KCC with a list of fax numbers, account numbers, and mailing addresses for potential class members.  (Dkt. 39-3 [Declaration of Victoria Fellner on Behalf of Settlement Administrator Regarding Notice, hereinafter "Fellner Decl."] ¶¶ 3–4.)  After removing duplicate fax numbers, confirming addresses, and screening names and addresses using the United States Postal Service ("USPS") Change of Address database, KCC identified 3,937 valid postal addresses to receive notice.  (*Id.*)  In July and August 2019, KCC mailed Class Notices to these prospective settlement class members, established a public website for the settlement (www.RetinaTCPASettlement.com), and set up a toll-free settlement hotline.  (Fellner Decl. ¶¶ 5–8, Exs. A, B.)

In October, the Court approved the parties' stipulation to extend the deadline for class members to submit a claim from October 11, 2019 to December 10, 2019.  (Dkt. 38.)  Later that month, KCC issued a second, supplemental mailing to the 3,881 class members that had not responded to the first mailing.  (Fellner Decl. ¶ 8).  The class notice has now reached approximately 94% of individuals listed in the materials provide by Keeler.  (*Id.*)  As of October 31, 2019, KCC received 126 timely and valid claims.  (*Id.* ¶ 12.)  As of December 10, 2019, KCC received 219 timely and valid claims. (Dkt. 45-2 [Declaration of Victoria Fellner, hereinafter "Second Fellner Decl."] ¶ 13).  Based on the requested fees and costs, $176,074.49 will be available to distribute to claimants.  (See Dkt. 39-2 [Declaration of Ronald Eisenberg, hereinafter "Eisenberg Decl."] ¶ 21.)  Accordingly, the per-class member settlement benefit will be approximately $800.  No one has requested to be excluded from the class, and no one has objected to the settlement.  (*Id.* ¶¶ 10–11; Mot. at 5–6.)  KCC also provided timely notice to state and federal officials as required by 28 U.S.C. § 1715.  (Fellner Decl. ¶ 2.)  Plaintiff now seeks final approval of the settlement, fees, and costs

## III.  DISCUSSION

In assessing whether to grant final approval, the Court analyzes (1) the propriety of granting class certification for purposes of settlement, (2) the fairness of the settlement, and (3) the reasonableness of the fees, costs, and incentive award requested.

### A.      Class Certification

A plaintiff seeking class certification must satisfy two sets of requirements under Federal Rule of Civil Procedure 23: (1) the Rule 23(a) requirements concerning numerosity, commonality, typicality, and adequacy, and (2) the requirement that the action fall within one of the three "types" of classes described under the subsections of Rule 23(b).  In this case, Plaintiff seeks certification of the class pursuant to Rule 23(b)(3), which allows certification if a court "finds the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  The Court previously concluded that Plaintiff presented sufficient evidence to show that the proposed class satisfied the numerosity, commonality, typicality, and adequacy requirements under Rule 23(a), as well as the predominance and superiority requirements under Rule 23(b)(3).  (*See* Dkt. 35 at 3–8.)  Having reviewed those elements again, the Court adopts its prior analysis with respect to class certification and grants certification of the proposed class for purposes of settlement only.

### B.      Fairness of the Settlement

The Court now evaluates the fairness of the settlement.  Although there is a "strong judicial policy that favors settlements, particularly where complex class action litigation

is concerned," *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998), a settlement of class claims requires court approval. Fed. R. Civ. P. 23(e). This is because "[i]ncentives inhere in class-action settlement negotiations that can, unless checked through careful district court review of the resulting settlement, result in a decree in which the rights of class members, including the named plaintiffs, may not be given due regard by the negotiating parties." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (alterations and quotations omitted).

Under Federal Rule of Civil Procedure 23, the Court must "determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Staton*, 327 F.3d at 959 (citation and quotation marks omitted). In considering whether this standard is met, a district court must consider various factors, including "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement." *Id.* (citation and quotation marks omitted). Having considered the *Staton* factors, the Court finds the Settlement Agreement fundamentally fair and reasonable.

1. <u>Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation</u>

The strength of Plaintiff's case, when balanced against the risks and obstacles inherent in continued litigation, weighs in favor of granting final approval of the Settlement Agreement. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041–42 (N.D. Cal. 2008) (discussing how a class action settlement offered an "immediate and certain award" in light of significant obstacles posed through continued litigation); *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *3 (N.D. Cal. 2007) ("Additional

consideration of increased expenses of fact and expert discovery and the inherent risks of proceeding to summary judgment, trial and appeal also support the settlement.").

The parties did not settle until after Plaintiff amended its complaint in response to Keeler's motion to strike class action allegations. (Dkt. 13; FAC.) The parties also conducted several months of formal and informal discovery, which allowed Plaintiff to obtain fax transmission records and information about the number of putative class members and the strength of their claims. (Mot. at 12–13.) The parties then conducted a full-day mediation and follow-up meetings to negotiate the settlement structure now before the Court. (Lehrman Decl. ¶¶ 25–26.) The involvement of an experienced mediator following discovery, while not conclusive, is a helpful barometer for the Court, including because it indicates that the settlement agreement was non-collusive. *See Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

The Settlement Agreement also presents a fair compromise considering the risks and expense of continued litigation. If Plaintiff succeeded in certifying a class and prevailed on the merits, potential damages could be higher than those reflected in the Settlement Agreement. However, continued litigation would have involved considerable obstacles. For instance, class certification in TCPA cases often turns on whether Defendants have any evidence that the fax recipients gave prior express consent. Determining consent can involve individualized issues that defeat commonality and predominance. *See Connelly v. Hilton Grand Vacations Co.*, 294 F.R.D. 574, 577 (S.D. Cal. 2013) (noting that class certification in TCPA cases "is warranted only when the 'unique facts' of a particular case indicate that individual adjudication of the pivotal element of prior express consent is unnecessary" (citation omitted)). Indeed, while maintaining the strength of its case, Plaintiff acknowledges several risks to continued

litigation.  (Mot. at 9.)  In addition to opposing class certification, Keeler raises seventeen affirmative defenses in its answer and has challenged Plaintiff's Article III standing to bring the instant suit.  (*See id.*)  Accordingly, this factor weighs in favor of approving the settlement.

### 2.   Amount Offered in Settlement

The Court finds that the amount offered is fair and reasonable.  Keeler has agreed to a common fund settlement of $310,000, and, deducting the requested fees and costs, Plaintiff estimates a per-class member settlement benefit of approximately $800.  (Eisenberg Decl. ¶ 21.)  This benefit is substantial.  The maximum statutory damages for a non-knowing or non-willful violation of the TCPA is only $500 per violation.  47 U.S.C. § 227.  Indeed, the likely per-member benefit greatly exceeds most TCPA settlements, which usually range from $20 to $100 per-class member.  *See, e.g., In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, 2012 WL 4849617, at *2 (S.D. Cal. Oct. 10, 2012) (approving certificate for $20 in defendant's goods or $15 in cash); *Rose v. Bank of Am.*, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (approving award amount between $20 and $40 in cash).  (See Mot. at 11 [collecting settlement amounts in TCPA settlements].)  In the Court's view, the amount offered in settlement is reasonable.  This factor weighs in favor of approving the settlement.

### 3.   Extent of Discovery Completed, Stage of Proceedings, and Experience and Views of Counsel

The Settlement Agreement is also reasonable given the stage of this litigation.  Where the "parties have sufficient information to make an informed decision about settlement," this factor weighs in favor of approving the settlement.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (internal citation and quotation marks

omitted).  Indeed, "[a] settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."  *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 889 (C.D. Cal. 2016).

The parties here gathered enough information after more than one year of discovery and litigation to make an informed decision about whether the terms of this Settlement Agreement were fair.  Plaintiff's counsel are experienced class-action litigators, and the parties conducted formal and informal discovery and went through mediation with an experienced arbitrator.  (*See* Mot. at 12–13.)  These facts, among others, make the Court confident that the parties were able to realistically value Keeler's liability and assess the risk of continuing to litigate.  The parties' discovery and negotiation allowed them to reasonably evaluate the cost, duration, and risk of further litigation.  The Court is satisfied that the parties reached the Settlement Agreement after developing a full and fair understanding of the merits and risks of the case, and negotiating at arm's length.  This factor weighs in favor of approving the settlement.

### 4. Reaction of Class Members

Following the Court's preliminary approval, KCC used a multi-pronged notice campaign to reach class members.  According to a KCC project manager, KCC:

- On August 12, 2019, mailed a class notice and class forms to 3,937 class members whose physical address was available based on data from Keeler and a USPS National Change of Address search, (Fellner Decl. ¶¶ 3–4, 7),

- On October 25, 2019, mailed a second letter, including a class notice, class form, and return envelope to the 3,881 class members who had not responded, which, together with the first notice, successfully reached approximately 94% of the members of class list from Keeler, (*id.* ¶ 8),

- Created a settlement website with copies of the Settlement Agreement, Claim Form, and Order Granting Preliminary Approval available for download, as well as a Frequently Asked Questions page, (*id.* ¶ 5),

- Created a case-specific toll-free telephone number, where callers could hear FAQs, submit a claim form, or speak to a live operator, (*id.* ¶ 6).

As explained above, the deadline for class members to submit a claim was extended to December 10, 2019.  (Dkt. 38.)  As of December 10, 2019, KCC received 219 timely and valid claims.  (Second Fellner Decl. ¶ 13.)  Approximately 5.6% of class members submitted a valid claim.  (*See id.*)  Plaintiff's motion does not address this rate, but—given the efforts detailed above—the Court is satisfied that KCC's notice was sufficient.  The low response rate may be related to the delay between the alleged transmissions and class members' notice of this action.

The deadline to submit a request for exclusion was September 25, 2019, and the deadline to submit an objection to the settlement was October 11, 2019.  (*Id.* ¶¶ 10–11.)  KCC has not received a single request for exclusion or objection.  (*Id.*; Dkt. 41.)  Considering the number of mailings that were sent, this is an overwhelmingly positive class reaction, and this factor favors final approval.  *See Mego Fin. Corp.*, 213 F.3d at 459 (concluding that this factor supported conclusion that district court did not abuse its discretion in approving settlement where "[o]nly one of the 5,400 potential class members to whom notice of the proposed Settlement and Plan of Distribution was sent chose to opt-out of the class"); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members.").

Accordingly, the Court finds the Settlement Agreement fair, adequate, and reasonable under the *Staton* factors.

### 5.   Rule 23(e)(2) Factors

The Court must also find the settlement "fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

   (i) the costs, risks, and delay of trial and appeal;

   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

   (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other."

Fed. R. Civ. P. 23(e)(2).  There is substantial overlap between these factors and the *Staton* factors, so the Court does not repeat itself here.  The Court has considered these factors and finds that the settlement is fair, reasonable, and adequate.

### C.   Attorney Fees and Costs, Litigation Costs, Plaintiff's Incentive Award, and Settlement Administration Costs

Plaintiff's counsel also seek final approval of their request for (1) $77,500 in attorney fees, (2) $8,282.79 in litigation costs, (3) $5,000 for an incentive payment to

Retina Associates as the class representative, and (4) $43,142.74 for KCC's settlement administration costs.  (*See* Fee Mot.)  The Court found at the preliminary approval stage that the request for attorney fees and incentive award was reasonable, (Dkt. 35 at 10–11), and the Court makes the same finding here.  The Court also approves the request for litigation and settlement administration costs based on the evidence presented by Plaintiff.

### 1. Attorney Fees and Litigation Costs

A district court has the authority and the duty to determine the fairness of attorney fees in a class action settlement.  *See Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1329 (9th Cir. 1999).  Pursuant to the Settlement Agreement, counsel's fees will be paid from the common Settlement Fund.  (SA § 10.35.)   When a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method to calculate attorney fees.  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942–43 (9th Cir. 2011).  The amount of fees awarded rests ultimately in the court's sound discretion.  *Evans v. Jeff D.*, 475 U.S. 717, 736 n.26 (1986), *superseded by statute on other grounds*.

The Court applies the percentage-of-recovery method here.  Under this method, the Ninth Circuit has held that twenty-five percent of the fund is the "benchmark" for a reasonable fee award, and courts must provide adequate explanation in the record of any "special circumstances" to justify a departure.  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942–43 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ("We note with approval that one court has concluded that the 'bench mark' percentage for the fee award should be 25 percent.  That percentage amount

can then be adjusted upward or downward to account for any unusual circumstances involved in this case." (internal citation omitted)).

Plaintiff's counsel seek $77,500 in attorney fees as twenty-five percent of the $310,000 Settlement Fund.  The Court finds this amount is both fair and reasonable in light of the results achieved, counsel's efforts in litigating this action, and the risks inherent in continued litigation.  It is also consistent with fee awards for common-fund cases in this district.  *See In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 897 (9th Cir. 2017) (affirming 25% benchmark fee award); *Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at *5 (C.D. Cal. Oct. 24, 2017) (awarding 25% of the fund); *Kmiec v. Powerwave Techs., Inc.*, 2016 WL 5938709, at *7 (C.D. Cal. July 11, 2016) (same).

Plaintiff's counsel also provide the Court with the materials necessary to perform a "lodestar cross-check."  Courts commonly—even after having decided to utilize the percentage-of-recovery method—perform a lodestar cross-check to assess the reasonableness of the percentage award.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("Calculation of the lodestar, which measures the lawyer's investment of time in the litigation, provides a check on the reasonableness of the percentage award."); *see also In re Bluetooth*, 654 F.3d at 943 (encouraging a "comparison between the lodestar amount and a reasonable percentage award").

Here, Plaintiff's counsel calculate their lodestar fee to be approximately $126,500 based on their hours worked and reasonable hourly rates.  (Fee Mot. at 14.)  The percentage award is therefore substantially less than the lodestar fee and reflects a negative multiplier.  This supports the Court's finding that the requested fee award is reasonable.  The Court also finds counsel's request for $8,282.79 in litigation costs reasonable and well-supported by the evidence presented in their motion.  Accordingly,

the Court awards Plaintiff's counsel $77,500 in attorney fees and $8,282.79 in litigation costs.

### 2. Plaintiff's Incentive Award

Plaintiff also seeks an incentive award of $5,000.  Courts routinely approve this type of award to compensate representative plaintiffs for the services they provide and the risks they incur during class action litigation.  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 499 (E.D. Cal. 2010).  When evaluating the reasonableness of an incentive award, courts may consider several factors, including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions," and the time the plaintiff spent pursing the litigation.  *Staton*, 327 F.3d at 977 (citation and quotation marks omitted).

The named plaintiff in this case has been involved since the beginning.  (Dkt. 40-3 ¶ 4.)  It devoted employee hours to meetings with counsel, investigating company records, responding to written questions and document requests propounded by Defendants, and reviewing the terms of the proposed settlement agreement.  (*Id.* ¶ 5.) Plaintiff likely could have negotiated an individual settlement for more than $5,000, but declined to do so for the benefit of the settlement class.  (*Id.* ¶ 6.)

Under comparable circumstances, courts have approved similar awards to lead plaintiffs.  *See, e.g.*, *Vasquez*, 299 F.R.D. at 491 (awarding $5,000); *In re Toys R Us-Del., Inc.—Fair & Accurate Credit Transactions Act Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014) (explaining that California district courts typically approve incentive awards between $3,000 and $5,000).  The Court finds that the requested $5,000 award is

reasonable considering the significant time and effort Plaintiff expended during litigation and the actions it took to protect the interests of the class.

### 3. Settlement Administrator Costs

Finally, Plaintiff seeks $43,142.74 for settlement administration costs.  As discussed above, KCC implemented the court-approved settlement administration plan by two separate direct mailings, maintaining a settlement website, maintaining and staffing a toll-free telephone hotline, validating settlement claims, distributing checks, and preparing reports and declarations.  Plaintiff's request covers the direct and administrative costs of these services, including the costs of printing and mailing notices. Before retaining KCC, Plaintiff's counsel obtained quotes of more than $66,000 from competing settlement administration firms.  (Dkt. 45-1.)  Plaintiff has presented invoices from KCC detailing their expenses, staff hours, and remaining costs.  (Dkt. 45-2.) Accordingly, the Court finds counsel's request for $43,142.74 in settlement administration costs well-supported and reasonable based on the services provided by KCC.

//
//
//
//
//
//
//
//
//
//

**IV.  CONCLUSION**

For the foregoing reasons, Plaintiff's motions for final approval of the Settlement Agreement and motion for fees and costs are **GRANTED**.  Plaintiff's counsel are awarded $77,500 in attorney fees and $8,282.79 in litigation costs.  Plaintiff Retina Associates is awarded $5,000 for its service as class representative.  Finally, the Court approves Plaintiff's request for $43,142.74 in settlement administration costs for KCC.

DATED:     December 13, 2019

_____

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE